MICHAEL GREEN, Plaintiff-Appellant, *v.* BOARD OF FIRE AND POLICE COMMISSIONERS OF THE CITY OF ROCK ISLAND *et al.*, Defendants-Appellees.

Third District   No. 79-879

Opinion filed August 13, 1980.

J. Dale Berry, of Chicago, for appellant.

Peter H. Lousberg and Bernard C. Gillman, both of Rock Island, for appellees.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

Plaintiff Michael Green appeals from an order of the Circuit Court of Rock Island County affirming an order of discharge by the Board of Fire and Police Commissioners of the City of Rock Island (hereinafter Board). Plaintiff Green, a police officer for the city of Rock Island, was discharged following a hearing before the Board pursuant to section 10—2.1—17 of the Illinois Municipal Code (Ill. Rev. Stat. 1977, ch. 24, par. 10—2.1—17). Officer Green filed a complaint for administrative review in

the circuit court against the Board, Ronald Hansen, chief of police, and the city of Rock Island. The circuit court affirmed, in its entirety, the decision of the Board to discharge Officer Green from his duties as a police officer. The issues, as framed by plaintiff Green, are (1) whether the Board erred in concluding that a personal animosity against Officer Green on the part of Chief Hansen was not a relevant factor in Hansen's decision to seek dismissal charges against Green, and (2) whether there was insubstantial evidence to support the Board's finding that Chief Hansen's suspension of Officer Green for the sleeping incident was a suspension "pending discharge" for that misconduct.

The record establishes that Chief Hansen filed formal charges against Officer Green on November 20, 1978, seeking his discharge from duty with the police department. Amended charges were filed in December 1978. Count I of the charges alleged that Officer Green was tardy for a scheduled court date. Count 2 alleged that Officer Green had engaged in destructive criticism of a fellow officer, contrary to departmental regulation. Count 3 alleged that Officer Green used profanity in circumstances contrary to departmental regulations. Count 4 alleged that Officer Green had not followed proper procedure when calling in sick. Counts 5 and 6, the principal focus on this appeal, alleged that Green neglected his duties by sleeping while on duty and that he failed to report to a superior officer after being so ordered during that same sleeping incident. Count 7 alleged that the cumulative effect of the actions set forth in counts 1 through 6 also formed a basis for discharge, in that they brought the department into disrepute and constituted conduct unbecoming an officer, such that Green's continued employment was detrimental to the discipline and efficiency of the public service.

Hearings on the complaint for discharge were held before the Board. At the conclusion of the hearings, the Board entered its order of discharge based solely upon the charges brought in counts 5 and 6 of the complaint. The basis for those two counts, and, therefore, the subsequent discharge, are incidents occurring on November 16-17, 1978. The findings of the Board, which are not disputed, are set forth below:

"5. Amended charges 5 and 6 relate to an incident occurring on November 16, 1978, and in connection with the evidence relating to that incident, the Board finds as follows:

a. Respondent did on November 16, 1978, remove his squad car from the public way and park it in a private driveway, among commercial buildings, at about 0130 hours where Respondent went to sleep. At about 0300 or 0330 hours the Police Radio Dispatcher at the Rock Island Police Department contacted Respondent by radio at which time Respondent was ordered to return to the Police Station. Respondent, contrary to that order, did

not return to the Police Station until shortly after 0400. Respondent does not recall the radio transmission, but acknowledges that it could have been made; Respondent acknowledges that he did sleep on duty at the location described above without reporting his location to the Police Station.

b. Respondent's last contact with the Radio Dispatcher of the Rock Island Police Department, before going to sleep, was while checking Lincoln Park in his area of responsibility; by reason of having gone to sleep and failing to answer radio calls to him, Respondent caused other Police personnel to divert their efforts and attention from their regular and normal duties and assignments, required Station personnel to take time away from their investigation and work relating to their normal duties and to a fatality automobile accident, caused other Police Officer to be diverted from their areas of assignment to locate Respondent, and did cause the Rock Island Police Department to request the assistance of the Illinois State Police Radio Network in attempting to locate Respondent.

c. Respondent's conduct on the date of the incident deprived the City of Rock Island, and its citizens, of Police protection in Respondent's area of responsibility and did divert Police protection from other areas of the City.

d. The conduct of sleeping while on duty is not permissible. Departmental regulations forbade sleeping on duty and the consequences of sleeping on duty was the subject of roll call announcements, all of which Respondent knew or had reason to know before November 16, 1978.

e. Respondent's conduct of November 16, 1978, is cause for discharge in that it constitutes a substantial shortcoming, rendering the officer's continued employment a detriment to the discipline and efficiency of the Service and in law and sound public opinion is not conducive to Respondent's continuing to hold the position of Police Officer in the City of Rock Island."

The record contains ample evidence to support the findings with respect to Officer Green's conduct on the night of November 16, 1978. The record also establishes that as a result of his conduct while on duty that night, Officer Green received an emergency suspension from duty by the superior officer on duty during his shift. The following day, November 17, 1978, a notice from Chief Hansen informed Green that he was being suspended from his duties for a period of five days for his conduct in neglecting his duty and disobeying an order. The notice also informed Green that the chief intended to file, during the period of suspension, charges with the Board requesting his discharge.

The Board made other findings with respect to the other charges, upon which evidence had been taken. The Board found that charges 1, 2 and 4 pertained to separate incidents which had already been the subject of previous discipline and therefore inappropriate for the Board's consideration, and outside its jurisdiction, except as matters in aggravation. Similarly, charge 7, based upon the cumulative effect of the other charges, was not considered in the Board basis for discharge findings, but only as a factor in aggravation. Charge 3 was found to be inappropriate for consideration at all in the decision and it was dismissed by the Board. Thus, it is perfectly clear that the Board based its discharge of Officer Green upon his misconduct as alleged and found under charges 5 and 6 of the complaint.

■■ The standards for appellate review over administrative decisions in this area are well established. We reviewed them at length in our opinion in *Mihalopoulos v. Board of Fire & Police Commissioners* (1978), 60 Ill. App. 3d 590, 594-98, 376 N.E.2d 1105. We noted an appellate court's proper function in such review proceedings, quoting from *DeGrazio v. Civil Service Com.* (1964), 31 Ill. 2d 482, 489, 202 N.E.2d 522:

> " 'On administrative review the court does not weigh the evidence and its function is limited to ascertaining if the findings and decision of the administrative agency are against the manifest weight of the evidence. In this type of proceeding involving the removal of a police officer, it is the function of the court to decide if the charges preferred against the officer are not so trivial as to be unreasonable or arbitrary, if the Commission acted on evidence that fairly tended to sustain the charges, and if its decision is related to the requirements of the service. The court cannot substitute its judgment for that of the Commission. [Citation.]' " (60 Ill. App. 3d 590, 597-98.)

In the instant case, the evidence supporting the charges of neglect of duty and disobedience of an order are largely uncontradicted. There is no question that the evidence before the Board supports its findings with regard to charges 5 and 6 of the complaint. No issue is actually raised by appellant Green's counsel on this point in his brief to the court. Similarly, on the question of the sufficiency of the misconduct to establish cause for discharge, there is no issue raised in appellant's brief. As to what constitutes cause, we stated the rule again in *Mihalopoulos*, 60 Ill. App. 3d 590, 596:

> " 'The "cause" for dismissal referred to in section 10—2.1—17 of the Illinois Municipal Code (Ill. Rev. Stat. 1975, ch. 24, par. 10—2.1—17) has been held to mean
>
>> "some substantial shortcoming which renders continuance in his office or employment in some way detrimental to the

> discipline and efficiency of the service and something which the law and a sound public opinion recognize as a good cause for his not longer occupying the place." [Citation.] [Citation.] A police board is accorded considerable discretion in determining what constitutes cause for discharge; and its decision as to the existence of cause will not be reversed "so long as its findings are related to the requirements of the service and not so trivial as to be arbitrary or unreasonable." [Citation.]' "

The Board noted the detrimental effects to the efficiency and discipline of the service as a result of Green's actions, and it concluded that, under the circumstances, his continuance in employment would be detrimental to the service. Its findings as to cause are directly related to the requirements of the service, which requires of officers that they efficiently perform, and not willfully neglect, their duties. Neither can it be reasonably concluded that the misconduct and charges were so trivial as to be arbitrary and unreasonable. This is not a case where an officer on duty catnaps for a few minutes or falls asleep briefly. While on duty, Officer Green secreted himself in his patrol car on private property, out of public view, without indicating his location to the department, and he went to sleep. He was unavailable to the department, his fellow officers, and those within his area of responsibility for over two hours while sleeping. His actions caused the resources of the department to be diverted from other activities in an attempt to locate him and also necessitated a broadcast on the State Police radio network. This is not a trivial sleeping incident, but a serious case of neglect of duty, and particularly serious in light of Officer Green's veteran status. The only excuse for his conduct offered is that he "was under considerable stress at this period of time due to his strained relationship with Chief Hansen." Even if there had been support for such a claim in the record, it amounts to no defense at all. We conclude that the Board's decision to discharge was based upon its findings set forth previously in this opinion and dealing with Officer Green's misconduct on November 16, 1978. We conclude that those findings are supported in the evidence and in the law.

■■ Counsel for Officer Green in his brief to this court does not seriously question those findings or the fact that Green's misconduct was serious enough to warrant discharge. Instead, counsel for appellant chooses to focus principally upon another finding of the Board:

> "Respondent's union activities, and the Complainant's [Chief Hansen] purported and alleged attitude toward the union activities is not relevant or material to Respondent's conduct as set forth in Amended Charges 5 and 6, or in relationship to Respondent's conduct as set forth in Amended Charges 1, 2 and 4 insofar as those

latter Amended Charges have been considered by the Board. All of Respondent's conduct as set forth in those Amended Charges were personal acts of Respondent and complaint of those acts were initiated by fellow officers or superiors other than Chief Hansen."

Appellant Green argues that the Board erred in concluding that the alleged personal animus by Chief Hansen was not relevant to the findings on discharge. Appellant's brief contains considerable argument seeking to establish that Chief Hansen's reason for seeking discharge against Green was based upon the chief's personal animosity against Green because of his union activities and his exercise of first amendment rights. The Board heard considerable testimony upon this alleged animosity, much of which is reviewed in appellant's brief, and there can be little question concerning the fact that Chief Hansen did not like Officer Green. However, the existence of such a relationship between the two men has no bearing on specific charges which the Board found to require Green's discharge. There is no showing made by appellant of how the alleged personal animus on the part of Chief Hansen related to or affected in any way the misconduct by Officer Green set forth in charges 5 and 6. As a court of review, sitting in review over administrative action, we must focus upon the findings of the agency to determine whether they are supported in the evidence and justified in law. We have already determined that its actions in discharging Officer Green are supported by its findings with respect to his misconduct on November 16, 1978. It has not been shown that the relationship between him and Chief Hansen is relevant or material to the charges relied upon by the Board to discharge Officer Green. We find the Board correctly concluded on that issue, and the question of any personal animosity was not relevant and material to their decision.

We would also note, on this point, that it is not within the chief's power to discharge an officer. That power and authority rests solely with the Board, by statute. Our review is over the decision of the Board in making its determination to discharge or otherwise discipline an officer. We also note that there is absolutely no indication in the record that the Board's discharge was motivated by its animus against Green nor is there evidence to indicate that Green was dismissed for the exercise of first amendment activities. Neither is there evidence or support indicating that the Board's decision to discharge was based upon other than proper grounds. The decision was based upon Officer Green's misconduct on November 16, 1978, and there is no support for a conclusion that the decision was merely a way to legitimatize a discharge based upon the Board's or Chief Hansen's animosity toward Green's union activities or his exercise of rights of free speech. In light of our findings as to the Board's conclusions and as to the irrelevance of the personal relationship between

Green and Hansen, no useful purpose would be served by our further recitation and discussion of that issue.

The second question raised by Officer Green on the appeal concerns the propriety and validity of the procedures utilized to bring him before the Board on discharge proceedings. It is argued that there is insufficient evidence to support the Board's finding that Chief Hansen's suspension of Officer Green for five days for the November 16, 1978, misconduct was actually a "suspension pending discharge" for that misconduct. Green argues that (1) Chief Hansen did not have the power to suspend him, pending discharge, and also that (2) he did not intend to suspend him pending discharge, but he intended to punish him as a final disposition of the matter. With regard to the first question, the power of Chief Hansen to suspend Officer Green pending discharge, we look first to the statutory section in question. In pertinent part that section provides:

> "Except as hereinafter provided, no officer or member of the fire or police department of any municipality subject to this Division 2.1 shall be removed or discharged except for cause, upon written charges, and after an opportunity to be heard in his own defense. * * * The board of fire and police commissioners shall conduct a fair and impartial hearing of the charges, to be commenced within 30 days of the filing thereof, which hearing may be continued from time to time. In case an officer or member is found guilty, the board may discharge him, or may suspend him not exceeding 30 days without pay. The board may suspend any officer or member pending the hearing with or without pay, but not to exceed 30 days. * * *
>
>                         * * *
>
> Nothing in this section shall be construed to prevent the * * * chief of the police department from suspending without pay a member of his department for a period of not more than 5 days, but he shall notify the board in writing of such suspension. Any policeman or fireman so suspended may appeal to the board of fire and police commissioners for a review of the suspension within 24 hours after such suspension, and upon such appeal, the board may sustain the action of the chief of the department, may reverse it with instructions that the man receive his pay for the period involved, or may suspend the officer for an additional period of not more than thirty days or discharge him, depending upon the facts presented." (Ill. Rev. Stat. 1977, ch. 24, par. 10—2.1—17.)

By the express terms of the statute, the board is given the power to suspend an officer pending the hearing on the charges, for a period up to 30 days. The statute is silent as to any power of the chief of police to suspend an officer pending the filing of charges with the board. The

statute does, however, in its concluding paragraph, indicate that the section is not intended to affect the suspension powers of the chief of police for up to five days. While we believe that the chief's limited power to suspend pending filing of charges before the board, and thus pending the board's assertion of jurisdiction, is a power necessary for the efficient and orderly functioning of the disciplinary scheme set forth in the statute, and thus to be implied therein, we do not reach the issue, for it has no bearing on the case before us.

The appellate court in *Bart v. Department of Law Enforcement* (1977), 52 Ill. App. 3d 487, 367 N.E.2d 773, was faced with a similar question, there arising under a similar statutory section providing for discharge of State police officers. (Ill. Rev. Stat. 1977, ch. 121, pars. 307.13, 307.14.) In *Bart* the superintendent of State Police suspended an officer for 30 days, as was his power under the statute, and he also filed charges with the merit board seeking the officer's discharge for the conduct covered by the initial suspension. The merit board found that the initial suspension was a suspension pending discharge and it found it permissible. The discharged officer argued that the superintendent did not have the power, by statute, to suspend the officer pending discharge, but only to suspend as final punishment. He also argued that the imposition of the suspension pending discharge along with the subsequent discharge constituted double jeopardy and violated due process. The appellate court held that there was no double jeopardy or due process violation in the procedure used in that case. (52 Ill. App. 3d 487, 490-92.) It found that the initial suspension, pending discharge, did not preclude subsequent punishment, in the way of discharge, for the same misconduct. In addressing the argument that the superintendent there did not have, by statute, the power to suspend pending discharge the court noted:

> "The Board cites no authority for this proposition [that the Superintendent could suspend pending discharge], and no express language to this effect can be found in the statute or in the Board's rules. However, assuming *arguendo* that the suspension pending discharge proceedings was improper, it does not affect the validity of the later discharge. Bart's remedy for any allegedly improper suspension is not before us." (52 Ill. App. 3d 487, 491.)

The same considerations are present in the instant case. Even assuming, *arguendo*, that Chief Hansen did improperly suspend Officer Green pending discharge, that does not invalidate or vitiate in any way the subsequent discharge by the Board upon the charges filed by Chief Hansen concerning the conduct occurring on November 16, 1978. That Green may have a civil action for allegedly improper temporary suspension in no way affects our review of the Board's decision to

discharge, which we have already determined was supported by the evidence and the law.

■■ Such conclusion does not dispose of this case, however, for the plaintiff also argues that the initial suspension by Chief Hansen was intended as a final disposition of the matter, and not as a suspension pending discharge. The plaintiff's second issue is put in those terms: that the Board's finding that the suspension was one pending discharge is erroneous. If, as is contended, the initial suspension was intended as final punishment, then the subsequent discharge proceedings would have been improper. (*Burton v. Civil Service Com.* (1979), 76 Ill. 2d 522, 394 N.E.2d 1168; *Le Desma v. Village of Burr Ridge Fire & Police Com.* (1978), 60 Ill. App. 3d 768, 377 N.E.2d 219.) In both cases, the courts distinguished between a suspension pending discharge and a suspension as final disposition. In the instant case, the plaintiff argues that there is too little evidence supporting a conclusion that Chief Hansen intended the suspension as one pending discharge. Notably, the same letter by Hansen informing Green of his initial suspension makes it abundantly clear that the matter was not to stop there and that the Chief was proceeding with the discharge charges. The last paragraph of the letter concerning the misconduct on November 16, 1978, states:

> "You are further notified that I intend to file, during your period of suspension with the Fire and Police Commission of the City of Rock Island, charges against you and a request for your discharge as a Police Officer of the City of Rock Island, Illinois."

We find from this letter that the chief did not intend the five-day suspension as a final disposition of the misconduct discussed in the letter. Thus, the Board's conclusion that the initial suspension was one pending discharge is supported adequately in the record.

The findings and decision of the Board in this case are supported in the record, and there is nothing in the procedures used in putting the case before the Board that requires reversal of its decision. The Board had jurisdiction and its decision has support. Therefore, the decision of the Board and its affirmance by the Circuit Court of Rock Island County are affirmed.

Affirmed.

SCOTT and BARRY, JJ., concur.