TIMOTHY SHEEHAN, Plaintiff-Appellee, v. THE BOARD OF FIRE AND POLICE COMMISSIONERS OF THE CITY OF DES PLAINES *et al.*, Defendants-Appellants.

First District (5th Division) No. 86—2350

Opinion filed May 1, 1987.—Supplemental opinion filed on denial of rehearing June 12, 1987.

Arthur C. Thorpe and Patrick A. Lucansky, both of Klein, Thorpe & Jenkins, Ltd., of Chicago, and Erwin W. Jentsch, of Mount Prospect, for appellants.

John D. Moss, of Parrillo, Weiss & Moss, of Chicago, for appellee.

PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

Defendants appeal from the order of the circuit court reversing the board's order discharging plaintiff from his employment as a patrolman with the city police department. They contend that the court erred in reversing the board's decision. We agree.

After an extensive evidentiary hearing, the board found that on 12 separate occasions plaintiff falsely represented that he was working for two different employers at two different places during the same period of time and that on 10 of these occasions, plaintiff was on two payrolls for the same period of time and was being paid on the basis of those two payrolls.[1] The evidence in support of those findings is discussed below.

The board determined that by this conduct, plaintiff committed the criminal offenses of theft and attempted theft, violated departmental rules requiring compliance with laws and regulations and forbidding unbecoming conduct, and, in one instance, disobeyed a general departmental order by leaving his assigned post without permission. The board decided that plaintiff's activities constituted a substantial shortcoming which rendered his continuance in employment as a patrolman detrimental to the discipline and efficiency of the service and good cause for no longer being employed as a member of the police department. Accordingly, the board ordered plaintiff's employment terminated immediately.

On administrative review, the circuit court reversed. The court found that the board's decision was unconstitutional and illegal, that it violated due process, and that it was against the manifest weight of the evidence. In our judgment, the record does not support these findings and although not all of the court's criticisms of the proceedings require individual comment, we shall address the principal ones.

THE AMENDMENT TO THE CHARGES

■ A 10-count statement of charges was filed with the board on January 25, 1985. On February 2 an amended statement of charges, adding five counts, was filed. On February 26, the date scheduled for the commencement of the evidentiary hearing, the chief of police moved to file a second amended statement of charges. The proposed amendment did not add any new charges but merely made minor

---

[1]In addition to his full-time employment as a patrolman with the city of Des Plaines police department, plaintiff also was employed part time as a security guard for a local high school and a bank.

changes in the charges already on file.[2] There was nothing improper in the board's decision to permit the second amended statement of charges to be filed and plaintiff failed to demonstrate any prejudice because of the amendment. See *Giampa v. Civil Service Com.* (1980), 89 Ill. App. 3d 606, 611, 411 N.E.2d 1110.

The circuit court's finding that plaintiff was forced to proceed with the evidentiary hearing only moments after receiving the amended charges is contradicted by the record. Plaintiff's attorney acknowledged that he had received notice of the proposed changes four days earlier and expressly declined the board's offer of a continuance to prepare a defense to the second amended statement of charges because of the board's decision to continue plaintiff's suspension without pay during the pendency of the hearing.

THE BOARD'S AUTHORITY TO SUSPEND PLAINTIFF WITHOUT PAY

■■ The court stated its belief that Thomas McGuire, counsel for the board, improperly advised the board that it had the legal authority to suspend plaintiff without pay for several successive 30-day periods while the administrative hearing was pending.[3] We note, however, that in *McCoy v. Kamradt* (1985), 136 Ill. App. 3d 551, 483 N.E.2d 544, the court construed section 10—2.1—17 of the Illinois Municipal Code (Ill. Rev. Stat. 1983, ch. 24, par. 10—2.1—17), to permit a board of fire and police commissioners to suspend an employee without pay for more than 30 days during the pendency of a hearing. (*McCoy v. Kamradt* (1985), 136 Ill. App. 3d 551, 559-60. See also *People ex rel. Cotter v. Conlisk* (1974), 17 Ill. App. 3d 346, 347-48, 308 N.E.2d 1.) That case is dispositive of plaintiff's argument that the board lacked authority to suspend him without pay for more than 30 days prior to its final decision.

THE 1935 RULES

■■ The circuit court found that the rules and regulations under which the board operated (first adopted in 1935) were deficient because they did not specify the manner in which the administrative

---

[2]The changes concerned the hours during which plaintiff was alleged to have been working at two different employers at the same time. The amendment also corrected the numerical designation for the departmental rule requiring obedience to laws and regulations. The substance of that rule was set forth in both the original statement of charges, which did designate the proper number, and the amended statement of charges.

[3]Plaintiff was suspended without pay from January 30, 1985, until he was discharged on April 2, 1985.

hearing would be conducted. We note, however, that one of them, Rule 39, requires all charges to be set forth in writing, detailing the nature and character of the offense, and gives the accused the right to defend himself. Although the rules are otherwise silent regarding the procedure to be followed at a disciplinary hearing, the failure to adopt any rules governing dismissal proceedings does not constitute cause for reversal, unless prejudice is demonstrated. (*Westby v. Board of Fire & Police Commissioners* (1977), 48 Ill. App. 3d 388, 391-92, 362 N.E.2d 1098.) Plaintiff did not show how he was prejudiced by the board's failure to adopt more comprehensive rules.

On February 2, 1985, more than three weeks before the evidentiary hearing began, the board, acting through its counsel, advised plaintiff's attorney that the hearing would be conducted in accordance with section 10—2.1—17 of the Illinois Municipal Code (Ill. Rev. Stat. 1985, ch. 24, par. 10—2.1—17), and the cases interpreting that provision. On February 13 he acknowledged receipt of the board's rules and regulations and on February 26 he protested that those rules failed to specify the manner in which the administrative hearing would be conducted. Prior to that date, he had served the board with a motion asking that it inform him "of the procedural and evidentiary rules to be followed during the course of the hearing."

In a letter dated February 22, 1985, and sent to counsel for both parties, the board's attorney reiterated what he had said on February 2 and explained in greater detail the procedural and evidentiary rules that would be followed. Although plaintiff's attorney denied that he had received this letter, when the contents thereof were explained to him on February 26 he voiced no dissatisfaction with the guidelines McGuire had prepared for the hearing.

In our judgment, plaintiff was not prejudiced by the board's failure to adopt comprehensive rules governing the dismissal proceedings. He received the fair and impartial hearing to which he was entitled.

THE ROLE OF COUNSEL FOR THE BOARD

■ As we have noted previously, attorney Thomas McGuire acted as counsel for the board. At the outset of the hearing, the chairman announced that McGuire would respond to all objections and motions, unless the board decided otherwise.[4] The board at all times retained control over the proceedings and was free to accept or reject Mc-

---

[4]Plaintiff's counsel expressed no objection to this procedure until the end of the second day of hearings.

Guire's rulings as it saw fit, as McGuire often acknowledged during the proceedings. The circuit court took exception to this procedure, but we are aware of no authority forbidding it, at least where the attorney acts in a fair and neutral manner. (See *Ladenheim v. Union County Hospital District* (1979), 76 Ill. App. 3d 90, 394 N.E.2d 770; *Austin v. Board of Fire & Police Commissioners* (1972), 7 Ill. App. 3d 537, 544, 288 N.E.2d 113.) Although the court indicated its belief that McGuire was prejudiced against plaintiff, the record does not appear to support this conclusion.

The board, on McGuire's advice, granted plaintiff's motion for discovery, his motion to bar the taking of photographs in the hearing room, his motion to exclude witnesses, his motion requesting permission to take the sergeant's examination, and his motion to prevent police officers from wearing their sidearms while they testified.

McGuire cooperated with plaintiff's attorney in providing subpoenas; urged reciprocal discovery of names and addresses of all potential witnesses; insisted on compliance with the discovery orders (at one point temporarily barring the testimony of a witness whose name had been misspelled in an answer to discovery) and with the order excluding witnesses; and, on one occasion, ordered the hearing to be continued so that plaintiff's attorney would have an opportunity to receive and review all documentary evidence the chief of police intended to offer.

McGuire allowed plaintiff to present evidence of alleged bias. He sustained numerous objections made by his attorney and overruled others made by the attorney for the chief of police but he did not personally participate in the examination of any witnesses, except when he was expressly directed to do so by the board,[5] and he did not act as prosecutor. Finally, it must be noted that McGuire did not make any recommendations to the board regarding disposition of the charges brought against plaintiff or whether plaintiff should be suspended without pay during the pendency of the hearing.

We have reviewed the entire record of the proceedings and are satisfied that Thomas McGuire conducted himself in a fair and impartial manner as counsel for the board.

THE VIOLATION OF THE DISCOVERY ORDER

■ In his motion for discovery, plaintiff requested production of

---

[5]At the board's request, McGuire questioned several witnesses regarding a possible violation of the witness exclusion order.

all written reports of witnesses. Although the attorney for the chief of police represented, apparently in good faith, that there were no such reports, there was one instance of a writing which consisted of a notation made on the back of a time card from the high school by Captain Kozenczak regarding his surveillance of plaintiff on December 17, 1984. The circuit court's belief that the writing was never disclosed to plaintiff's attorney in discovery is refuted by the record, which reveals that the time cards were made available to him during a discovery conference on February 13, 1985, almost two weeks before the hearing began. Although he claimed on February 28 that he was not aware of the notation on the back of the time card, he admitted receiving photostatic copies of both sides of the card on February 27, which was 10 days before Captain Kozenczak testified. Since counsel had more than adequate time to prepare his cross-examination, we are unable to perceive how plaintiff was prejudiced by the alleged discovery violation.

THE INVESTIGATION INTO PLAINTIFF'S MISCONDUCT

■■ Plaintiff was not interviewed by any investigator from the police department before he was formally charged with various acts of misconduct. Although the circuit court criticized Captain Kozenczak, who was in charge of the investigation, for not giving plaintiff the opportunity to respond to the allegations before the chief of police filed formal charges against him, we are aware of no authority mandating such a procedure. (See *Klein v. Fair Employment Practices Com.* (1975), 31 Ill. App. 3d 473, 482-83, 334 N.E.2d 370 (plaintiff has no constitutional right to participate in the investigation of his charge).)[6] Notice to the employee of the improper acts he is alleged to have committed is required before interrogation or examination—not before investigation. *Fletcher v. Civil Service Com.* (1972), 6 Ill. App. 3d 593, 596-97, 286 N.E.2d 130.

Plaintiff had the opportunity to defend himself at the administra-

---

[6]Counsel for the board barred plaintiff from presenting opinion testimony from his father, a deputy chief of police in Chicago, as to whether it is "standard operating procedure" to interview an officer who is alleged to have engaged in wrongdoing. On McGuire's advice, plaintiff's offer of proof relative to this matter was heard out of the presence of the board and it has been held that "this procedure [is] more likely to ensure rather than detract from due process fairness by insulating the Board from hearing anything that was inadmissible." (*Weisenritter v. Board of Fire & Police Commissioners* (1979), 67 Ill. App. 3d 799, 804, 385 N.E.2d 336.) In our judgment, the proposed testimony was properly refused as irrelevant to the issues before the board.

tive hearing.[7] He received notice of the charges and enjoyed a hearing before an impartial tribunal at which he was represented by counsel and was allowed to cross-examine witnesses, present evidence in his own defense, and inspect documentary evidence against him. Generally, this is considered sufficient to insure due process in an administrative proceeding. *Ladenheim v. Union County Hospital District* (1979), 76 Ill. App. 3d 90, 96, 394 N.E.2d 770.

The court also criticized Captain Kozenczak for not interviewing other police officers who worked as part-time security guards at the high school and the bank and for not preparing written reports of the results of his investigation. However, the court did not explain how plaintiff was prejudiced by these alleged failures.

Plaintiff's attorney could have interviewed any of these officers or served them with subpoenas to appear at the hearing. Indeed, plaintiff did call two of these officers to testify for him. Moreover, in light of the substantial reliance the department placed on documentary evidence, the captain's decision not to prepare written reports of his investigation is understandable. In any event, plaintiff has not demonstrated that the failure to prepare such reports was improper or that he was prejudiced thereby.

THE VIOLATIONS OF THE EXCLUSION ORDER

■ The circuit court criticized McGuire for not enforcing the witness exclusion order against Lieutenant Scheskie, who sat at the hearing table with counsel for the chief of police during most of the proceedings. We believe that this criticism is unjustified.

When plaintiff's attorney objected to Scheskie's presence in the hearing room on February 26, 1985, the attorney for the chief of police indicated that he needed Scheskie's assistance and did not intend to call him as a witness.[8] McGuire then ruled that Scheskie could remain since he was not going to testify. It was not until two days later, on February 28, that plaintiff's attorney first indicated that he planned to have Scheskie testify in his own case. (Scheskie was not named as a potential witness by plaintiff prior to the hearing.) He expressed concern that he would be barred from calling Scheskie as a witness if he remained in the hearing room because of the reciprocal exclusion order that had been entered. Although the attorney for the

---

[7]Intradepartmental disciplinary proceedings would have served no useful purpose because the sanction of discharge would not have been available. Ill. Rev. Stat. 1983, ch. 24, par. 10—2.1—17; *Green v. Board of Fire & Police Commissioners* (1980), 87 Ill. App. 3d 183, 188, 408 N.E.2d 1187.

[8]Scheskie did not testify for either party.

chief of police offered to waive any objection, this offer did not satisfy plaintiff's attorney, who felt that Scheskie's testimony might be influenced by the testimony of Captain Kozenczak and Sergeant Freitag.[9]

At plaintiff's request, the board ordered Scheskie to leave the hearing room when Kozenczak and Freitag testified. Nothing in the report of proceedings indicates that Scheskie violated the exclusion order or suggests that plaintiff's failure to call him as a witness was attributable to a violation of that order. We note further that since it was plaintiff's attorney who intended to call Lieutenant Scheskie as a witness, it was his responsibility to see that the lieutenant did not remain in the hearing room when Captain Kozenczak and Sergeant Freitag testified. Plaintiff cannot base a claim of prejudice on his failure to do so.

The court also expressed the opinion that several witnesses violated the order of exclusion by eavesdropping on the hearing and by discussing their testimony with other witnesses.

Plaintiff's mother and brother testified that Captain Kozenczak and Sergeant Neil were standing next to the closed double doors of the hearing room where they allegedly could hear the testimony of the witness. They also claimed that after Sergeant Diehl left the hearing room, he discussed his testimony with Lieutenant Kuta and other witnesses who had not yet testified.

Both Kozenczak and Neil denied that they had overheard any witnesses or had discussed their testimony with anyone. Diehl denied that he had discussed his testimony with anyone and Kuta testified that he had discussed his testimony with Diehl and no one else only after both witnesses had testified.[10]

It was for the board to decide whether there was a violation of the exclusion order or the order forbidding witnesses to discuss their testimony with other witnesses who had not yet testified. We are unable to conclude that the board's decision denying plaintiff's motion for a "mistrial" was in error.

ADMISSIBILITY OF THE EXHIBITS

█ The board admitted into evidence 76 exhibits offered by the chief of police at the hearing. All but four of these exhibits were time cards and signed payroll time sheets from the high school, sign-in

---

[9]Captain Kozenczak, Lieutenant Scheskie, and Sergeant Freitag conducted a joint surveillance of plaintiff's activities between 5 p.m. on December 17, 1984, and 1:30 a.m. on December 18, 1984.

[10]This did not violate any order of the board.

sheets, work schedules, payroll journals and check registers from the bank, daily reports and daily activity forms from the police department, and cancelled payroll checks from both the school district and the bank. Although the circuit court held that these particular exhibits should have been excluded as inadmissible hearsay, we are unable to agree.[11]

We have carefully reviewed the record and are satisfied that the attorney for the chief of police laid an adequate foundation for the admission of these documents as business records, past recollection recorded, or written admissions of a party-opponent. (87 Ill. 2d R. 236(a); *Bass v. Washington-Kinney Co.* (1983), 119 Ill. App. 3d 713, 726-27, 457 N.E.2d 85; *Benford v. Chicago Transit Authority* (1973), 9 Ill. App. 3d 875, 293 N.E.2d 496; *People v. Carter* (1979), 72 Ill. App. 3d 871, 876, 391 N.E.2d 427; *Stanton v. Pennsylvania R.R. Co.* (1961), 32 Ill. App. 2d 406, 411-12, 178 N.E.2d 121.

OTHER MATTERS

■ The circuit court faulted the board for not allowing plaintiff to present and argue a motion for a directed finding at the conclusion of the hearing. The court, however, did not articulate how plaintiff was prejudiced thereby. An administrative body has broad discretion in conducting its hearings (*Desai v. Metropolitan Sanitary District* (1984), 125 Ill. App. 3d 1031, 1033, 466 N.E.2d 1045), and we find no basis here to conclude that the board abused that discretion, particularly in view of the fact that plaintiff was allowed to give a closing argument which essentially served the same purpose.

We also find no support for the court's finding that the board forced plaintiff's attorney to present his closing argument "after 16 straight hours of hearing" and restricted him to only 15 minutes of argument. The record does not reflect how long the board was in session but it does show that plaintiff's attorney stated that he was prepared to go forward with his argument and did not want a continuance. And, after he complained of the proposed limitation on closing argument, the board, through its attorney, informed him that he could have as much time as he needed. Nevertheless, his argument takes up less than 12 pages of transcript in the record.

As part of his defense, plaintiff tried to suggest that the testimony of some of the witnesses may have been influenced by their in-

---

[11]One exhibit, a high school district payroll check dated January 9, 1984, should have been excluded. We do not believe, however, that admission of this exhibit, which had no relevance to any of the charges, could have prejudiced plaintiff.

terest in being named to replace the chief of police, who was retiring, or in currying favor with his expected replacement or with the board. Not only do we see no substance to this suggestion but, even assuming it had some relevance, there was no prejudice where the board's decision was otherwise supported by ample evidence of plaintiff's misconduct. *Green v. Board of Fire & Police Commissioners* (1980), 87 Ill. App. 3d 183, 187-88, 408 N.E.2d 1187.

THE MANIFEST WEIGHT OF THE EVIDENCE

The circuit court found that the board's decision was against the manifest weight of the evidence. We disagree.

■■■ The findings of fact made by an administrative agency are to be considered *"prima facie* true and correct." (Ill. Rev. Stat. 1983, ch. 110, par. 3—110.) A court, on administrative review, should not weigh the evidence to determine where the preponderance lies but should limit its inquiry to ascertaining whether the findings and decision of the agency are against the manifest weight of the evidence. (*Collura v. Board of Police Commissioners* (1986), 113 Ill. 2d 361, 372-73, 498 N.E.2d 1148.) In order for a court of review to find that an agency's decision is against the manifest weight of the evidence so as to justify substituting its judgment for the discretion of the board, the court must be able to conclude that all reasonable and unbiased persons, acting within the limits prescribed by the law and drawing all inferences in support of the finding, would agree that the finding is erroneous and that the opposite conclusion is clearly evident. (*O'Boyle v. Personnel Board* (1983), 119 Ill. App. 3d 648, 653-54, 456 N.E.2d 998.) That an opposite conclusion might be reasonable or that the court might have reached a different conclusion is not adequate to set aside the agency's decision. (119 Ill. App. 3d 648, 654, 456 N.E.2d 998.) In our judgment, an opposite conclusion is not clearly evident.

The board found that on 12 separate occasions plaintiff falsely represented that he was working for two different employers at two different places during the same period of time and that on 10 of these occasions, plaintiff was on two payrolls for the same period of time and was being paid on the basis of those two payrolls. These findings were supported by substantial documentary evidence, including time cards and payroll time sheets from the high school, sign-in sheets, work schedules, payroll journals and check registers from the bank, daily reports and daily activity forms from the police department, and cancelled paychecks from both the school district and the bank. There was also evidence of a surveillance that was conducted of plaintiff's activities on one occasion.

Plaintiff's signature appeared on the time sheets from the high school,[12] the sign-in sheets from the bank, and the payroll checks from both. Plaintiff refused to identify his signature on any of these documents. He admitted, however, that his social security number appeared on the time sheets, that his address had been printed on the front of the checks from the bank, and that his bank account number had been written on the back of many of the checks from both the high school and the bank. Although his name and badge number appeared on the daily activity forms which were turned in at the end of each shift at the police department, plaintiff was unable to state whether he had completed any of the forms.

With the exception of the one incident where there had been a surveillance (December 17, 1984), plaintiff could not recall whether he had been scheduled to work or had worked at the police department, the high school, or the bank on any of the dates specified in the charges. Although he generally denied that he had received or had attempted to receive any compensation from either the high school or the bank for time which either he or a substitute he paid had not actually worked,[13] plaintiff presented no evidence that anyone substituted for him on any of the dates set forth in the charges. Further, plaintiff never explained why a substitute would not simply punch his own time card and fill in his own time sheet at the high school or sign in and sign out for himself at the security desk located at the bank. Indeed, plaintiff himself testified that when he substituted for another officer at the high school on December 17, 1984, he used his own time card.[14]

■■■ Plaintiff's defense cannot be reconciled with the documentary evidence, and his generalized denials of wrongdoing and his credibility were discredited by his persistent refusal to identify his signature on more than 40 documents, his inability to recognize other documents that he prepared, and his failure to recall where he was working on any of the dates in question. From our review of the record, we are satisfied that the board's decision was not against the manifest weight of the evidence.

---

[12]Two of the time sheets from the high school bear a signature which does not appear to be plaintiff's. Nevertheless, the evidence indicates that plaintiff was paid for the hours listed.

[13]At both the high school and the bank, security guards were allowed to have authorized substitutes work in their place.

[14]Plaintiff's defense did not account for the presence of his own signature on the time sheets for the high school and the sign-in sheets for the bank.

SPECIFIC FINDINGS OF FACT

■■ Plaintiff argued to the circuit court that the board failed to make specific findings of fact on the record. The board's findings were properly and adequately set forth in its written decision discharging plaintiff from the department. There is no requirement that the findings themselves must be made "on the record," *i.e.*, orally, during the course of the hearing. *Shapiro v. Regional Board of School Trustees* (1983), 116 Ill. App. 3d 397, 402-03, 451 N.E.2d 1282.

THE DENIAL OF PLAINTIFF'S PETITION FOR REHEARING

■■ Plaintiff also argued that the board improperly denied his petition for rehearing. Although one of the defendants responds that the board had no authority to grant a rehearing (see *People ex rel. Olin Corp. v. Department of Labor* (1981), 95 Ill. App. 3d 1108, 1112, 420 N.E.2d 1043 (and the cases cited therein)), we need not decide this issue. Even assuming, *arguendo*, that a rehearing could have been allowed, we note that normally an administrative agency is not required to open up the record and consider new evidence. *Lloyd A. Fry Roofing Co. v. Pollution Control Board* (1977), 46 Ill. App. 3d 412, 417, 361 N.E.2d 23.

The "new evidence" plaintiff offered in support of his petition consisted of extremely vague representations that several other police officers on the department would testify that they substituted for plaintiff as a security guard on various unspecified dates in 1984. None of this proposed testimony would have contradicted the board's findings and the petition for rehearing was properly denied. We note further that plaintiff could have subpoenaed these officers to testify at his administrative hearing. See *McLean v. Rochford* (N.D. Ill. 1975), 404 F. Supp. 191, 198 (and the cases cited therein).

THE SANCTION OF DISCHARGE

Although not discussed in the circuit court's decision, we shall briefly address the propriety of the sanction of discharge.

■■ An administrative agency's decision as to whether cause for discharge exists will not be reversed unless it is arbitrary, unreasonable, or unrelated to the requirements of service. (*Department of Mental Health & Developmental Disabilities v. Civil Service Com.* (1981), 85 Ill. 2d 547, 552, 426 N.E.2d 885.) Here, the board determined that plaintiff committed the criminal offenses of theft and attempted theft, violated departmental rules requiring compliance with laws and regulations and forbidding unbecoming conduct, and, in one instance, disobeyed a general departmental order by leaving his assigned post

without permission. The board decided that plaintiff's activities constituted a substantial shortcoming which rendered his continuance in employment as a patrolman detrimental to the discipline and efficiency of the service and good cause for no longer being employed as a member of the police department. (See *Brown v. Civil Service Com.* (1985), 133 Ill. App. 3d 35, 41, 478 N.E.2d 541.) Accordingly, the board ordered Sheehan's employment terminated immediately.

We believe that the sanction of discharge was fully warranted by what one of the defendants characterizes as plaintiff's "continuous pattern and practice of deception of off-duty employers." Even plaintiff's attorney conceded in his opening statement to the board that "if my client did what is stated in the allegations there would be sufficient basis to remove him from the department." It is apparent that a police officer who does not abide by the laws which he has a duty to enforce will impair the discipline and efficiency of the police force. Sufficient cause for plaintiff's discharge exists regardless of whether other officers in the department may have received different treatment. (*Jones v. Civil Service Com.* (1979), 80 Ill. App. 3d 74, 76, 399 N.E.2d 256.)[15] Upon our review of the record and the board's findings of fact, we are unable to conclude that the sanction of discharge was arbitrary, unreasonable, or unrelated to the requirements of service.

For the foregoing reasons, we reverse the judgment of the circuit court of Cook County reversing the board's findings, decisions, and order of discharge.

Reversed.

LORENZ and MURRAY, JJ., concur.

SUPPLEMENTAL OPINION ON DENIAL OF REHEARING

PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

Plaintiff has filed a lengthy petition for rehearing in which he alleges that our opinion is flawed by numerous inaccuracies and misstatements of fact. This supplemental opinion is our response to those allegations.

---

[15]The record does not permit an informed comparison between the conduct for which plaintiff was discharged and the conduct for which other officers were merely suspended.

THE AMENDMENT TO THE CHARGES

██ We stated in our opinion that the second amended statement of charges filed on February 26, 1985, did not add any new charges but merely made minor changes in the amended statement of charges previously filed on February 2, 1985. Although plaintiff questions the accuracy of this statement, we note that his argument is based on a copy of the amended statement of charges from which one page (page 9) is missing.

Page 9, which was included in volume III of the record on appeal, contains the eight paragraphs which plaintiff erroneously claims were added in the second amended statement of charges. (See Appendix "A" attached.) Those paragraphs specified the departmental rules and general order plaintiff allegedly violated. The second amended statement of charges did not allege any additional charges of misconduct. This is evident not only from a comparison of the two sets of charges, but also from an examination of the motion to amend the amended statement of charges and the argument thereon.

It is immaterial that the board may have set February 20, 1985, as the last date on which to file amended charges against plaintiff. No new charges were filed.[16]

Plaintiff also persists in arguing that he was compelled to proceed with the evidentiary hearing only a few minutes after he had received the second amended statement of charges. As we stated in our opinion, however, plaintiff's attorney admitted on February 26, 1985, that he had been served with a copy of the motion to amend the amended statement of charges on February 22, 1985. (C. 172, C. 175.) Except for two typographical errors in the numerical designation for the departmental rule requiring obedience to laws and regulations, which were corrected on February 26, 1985, the second amended statement of charges merely incorporated the changes proposed in the motion to amend which plaintiff's attorney received four days earlier. Those changes, as we said in our opinion, were minor.

Moreover, contrary to the repeated assertions in his petition for rehearing, plaintiff's attorney did decline the Board's offer of a continuance. C. 176-78, C. 190-92.

"Mr. McGuire [counsel for the board]: Now, Mr. Moss, do you wish a continuance of this matter?

---

[16]On February 26, 1985, Chairman Wilson announced that February 20 was the last date on which to file motions and amended charges. There is no mention of such an order prior to February 26, 1985.

Mr. Moss: Only if my client will be reinstated in the meantime." C. 177.

The board denied counsel's motion to reinstate plaintiff on active duty or to suspend him with pay and granted Commissioner Connolly's motion to continue plaintiff's suspension without pay. (C. 191.) Counsel for the board then inquired:

"Now, Mr. Moss, the question the Board would like you to address is do you wish a continuance of this matter?

Mr. Moss: No, I do not.

Mr. McGuire: Are you ready to proceed then?

Mr. Moss: I have a couple of preliminary motions and then yes." C. 191-92.

THE VIOLATION OF THE DISCOVERY ORDER

 Plaintiff disputes our finding that his time cards from the high school (including the card on the back of which Captain Kozenczak noted details of his surveillance of plaintiff on December 17, 1984) were made available to his attorney during a discovery conference on February 3, 1985. We note, however, that plaintiff's attorney acknowledged at that conference that he had received the time cards requested in his motion for discovery. (C. 140-41.) It would appear from the comments of the attorney for the chief of police on February 28, 1985, and March 9, 1985, that plaintiff's attorney was given an opportunity to review the original cards at the discovery conference on February 12, 1985, and was provided with copies thereof. C, 267, C. 304, C. 478.

Even assuming, however, that the December 17, 1984, time card was not among those submitted at the discovery conference, it is undisputed that plaintiff's attorney became aware of Captain Kozenczak's written notation 10 days before the captain testified, which plaintiff concedes was ample time to prepare his cross-examination. Plaintiff's present claim that the notation was not disclosed in time for him to prepare his defense is disingenuous. Plaintiff did not begin to present his defense until 10 days after the notation was discovered and he never requested a continuance. Moreover, plaintiff has failed to explain how the disclosure of the notation until after he had been called as an adverse witness by the chief of police could have resulted in any prejudice.

ADMISSIBILITY OF THE EXHIBITS

 In his petition for rehearing, plaintiff challenges our finding that the attorney for the chief of police laid an adequate foundation

for the admission of his exhibits as business records, past recollection recorded or written admissions of a party-opponent.

The evidentiary basis for admission of the exhibits as business records may be found in the testimony of Garry Vande Vusse (C. 328-60), Sergeant Ronald Diehl (C. 381-84A), Sergeant Kenneth Randolph (C. 393-400), Lieutenant William Kuta (C. 405-10), Lieutenant John Storm (C. 425-30), Sergeant Robert Neil (C. 436-41), Eldon Burk (C. 486-87, 494-505), Beverly Tednes (C. 531-38A, C. 541-42) and Captain (now chief of police) Joseph Kozenczak (C. 547-51, C. 553-56). Although plaintiff testified that he could not identify any of the exhibits shown to him at the hearing, he did not question their authenticity and admitted that they appeared to be the type of records that normally would have been made in the regular course of business. C. 214-24, C. 227-32, C. 269-324.

An independent basis for admission of certain exhibits from the Des Plaines police department as past recollection recorded may be found in the cross-examination of Sergeant Diehl (C. 386-88), Sergeant Randolph (C. 400), Lieutenant Kuta (C. 409), and Sergeant Neil (C. 441), when considered together with their testimony on direct examination.

Garry Vande Vusse, the security director for the First National Bank of Des Plaines, testified that plaintiff's signature appeared on seven sign-in sheets for the security desk at the bank. (C. 336-41, C. 343-45, C. 347-48, C. 351-52, C. 355-57, C. 358-59.) There was unimpeached, uncontradicted testimony that Vande Vusse was familiar with plaintiff's signature. (C. 337-39, C. 341, C. 344, C. 356, C. 372-73.) Based on this testimony, the board was entitled to make its own comparisons between those exhibits and other exhibits on which plaintiff's signature appeared. (Ill. Rev. Stat. 1985, ch. 110, par. 8—1501; *Cook v. Moecker* (1920), 217 Ill. App. 479.) Exhibits relevant to issues in the hearing were properly admitted as the written admissions of a party-opponent where there was a basis on which the board could determine their authenticity.

CLOSING ARGUMENT

■■ At page 16 of our opinion we stated:

"We also find no support for the court's finding that the board forced plaintiff's attorney to present his closing argument 'after 16 straight hours of hearing' and restricted him to only 15 minutes of argument. The record does not reflect how long the board was in session but it does show that plaintiff's attorney stated that he was prepared to go forward with his ar-

gument and did not want a continuance." 158 Ill. App. 3d at 286.

Plaintiff characterizes this as "the most blatantly inaccurate statement as to what is contained in the Record" and attributes it to "a haphazard reading of the Record." This criticism is intemperate and gratuitous.

The record does not support the circuit court's finding that there were "16 straight hours of hearing" on March 9, 1985. The evidentiary hearing resumed at 9 a.m. (C. 468.) The board recessed once before lunch for 10 minutes (C. 530), and later adjourned for lunch until 2 p.m. (C. 638). The length of the lunch break is not indicated. The board again was in recess while plaintiff's attorney reviewed the exhibits with his client (C. 718), and recessed briefly six more times while it considered plaintiff's motions for directed findings. (C. 725, C. 729, C. 736, C. 738, C. 743, C. 745.) The board adjourned for dinner from 6:30 until 7:45 p.m. (C. 746), and thereafter went into four short recesses to complete its consideration of plaintiff's motions for directed findings (C. 750, C. 752, C. 759, C. 766). The board took two more short recesses before hearing closing arguments. (C. 824, C. 900.) The record does disclose that after plaintiff's attorney complained of the board's limitation on the length of closing argument, the attorney for the board informed him that he could have as much time as he needed. C. 906-07.

Although plaintiff's attorney expressed concern about proceeding with closing argument at 1 a.m., he stated that he would be prepared to give his argument after a brief recess. (C. 907.) When the board reconvened, however, counsel requested an opportunity to present *instanter* a motion for a directed finding on each of the charges and stated that he was physically unable to deliver a closing argument. (C. 908-09.) The board, acting through its attorney, denied counsel's request to present his motions, explaining that if counsel was "prepared to go forward with argument on the motion[s], then he is adequately prepared to go forward with the closing argument." C. 909.

Under the circumstances, we believe that this was a reasonable ruling by the board. Moreover, notwithstanding his protestations of fatigue, plaintiff's attorney twice denied that he wanted a continuance to prepare his closing argument:

> "And since this hearing began 16 hours ago, I have discussed this with my client. I am trying to read through my notes. And in all honesty, there are things in here that I can't read that I really can't correlate with other testimony. *And as much as I do not want a continuance and I want a decision as soon as*

*possible,* I cannot service my client by attempting to give a closing argument after being on trial in this matter for 16 hours straight with a break for lunch and a break for dinner and breaks in between." (Emphasis added.) C. 908.

"I am not physically able to argue tonight competently for my client. And for this reason, *although I do not want a continuance,* and I would like the shortest date possible to conclude this; however, as I said, that may be obviated by this Board hearing motions for directed findings at the close of all the evidence." (Emphasis added.) C. 909.

The board denied, not request for a continuance, which was never made, but a request to present motions for directed findings at the close of all of the evidence. (C. 909.) This is apparent from the following colloquy between the attorney for the chief of police and the attorney for the board:

"Mr. Jentsch: I understand he [Mr. Moss] has certain motions.

Mr. McGuire: His request to present the motion for directed finding has been denied." C. 910.

We believe that it is reasonable to assume that if plaintiff's counsel was capable of presenting and arguing a separate motion for a directed finding on each of the remaining counts in the second amended statement of charges "after 16 straight hours of hearing," that he also was capable of delivering his closing argument. Indeed, counsel stated at one point that he was prepared to go forward with his argument (C. 907), and he gave a coherent argument.

In his petition for rehearing, plaintiff renews his attack on the conduct of the attorney for the board, Thomas McGuire, alleging that McGuire improperly participated in the board's deliberations. This allegation distorts the record.

On April 2, 1985, the chairman of the board of fire and police commissioners announced that the board had asked McGuire to explain an appellate court decision relating to one of the issues before the board. (C. 944.) There was nothing improper about the board's consulting its legal advisor about the interpretation of a court decision. The case in question had been discussed during the hearing and there is not a scintilla of evidence that McGuire "participated in the deliberations," as plaintiff now suggests, or that he had offered any advice to the board during the course of its deliberations on any matter other than the one mentioned by the chairman.

In light of plaintiff's accusation in his brief that McGuire usurped the board's powers, it is not inappropriate to point out that immedi-

ately prior to announcing the board's decision, its chairman stated that the board had reviewed McGuire's rulings and had reaffirmed them. C. 944.

THE MANIFEST WEIGHT OF THE EVIDENCE

Plaintiff's argument in his petition for rehearing regarding the manifest weight of the evidence merely restates what he said in his brief and at oral argument and does not require further comment.

THE DENIAL OF PLAINTIFF'S PETITION FOR REHEARING

■■■ In our opinion, we described the "new evidence" offered in support of plaintiff's petition for rehearing as "extremely vague representations that several other police officers on the department would testify that they substituted for plaintiff as a security guard on various unspecified dates in 1984." Although plaintiff vigorously disputes this characterization, the affidavits attached to the petition for rehearing speak for themselves.

In the final paragraph of his affidavit, Officer Erik Helgesen stated:

"That one of the times and dates for which I worked for Timothy Sheehan at First National Bank of Des Plaines *more likely than not* included February 2, 1984 from 9:00 to 11:00 p.m." (Emphasis added.) D. 44.

Based on his conversations with three other Des Plaines police officers, plaintiff concluded in his affidavit:

"That if Patrolmen Ohlson, Greco and Childs are subpoenaed, *I believe* [that] they would testify that *they may have worked in my stead* on various dates enumerated in various Counts for which I was found guilty." (Emphasis added.) D. 46.

These affidavits obviously lack the specificity that would require a rehearing. We reaffirm our finding that "[n]one of this proposed testimony would have contradicted the board's findings and the petition for rehearing was properly denied." We also reiterate that plaintiff could have subpoenaed these officers and requested the board to order them to testify if they had refused.

THE SANCTION OF DISCHARGE

■■■ In a footnote to our opinion, we stated that "[t]he record does not permit an informed comparison between the conduct for which plaintiff was discharged and the conduct for which other officers were merely suspended." Plaintiff argues that he cannot be

blamed for the present state of the record because the board denied his request that "all of the stipulations and the complaints for all the other officers involved in this situation be made part of this record." (C. 958-60.) We note, however, that plaintiff never made an offer of proof to preserve this issue. In the absence of such an offer, we cannot conclude that the board erred in denying plaintiff's motion. (See *Lukas v. Lightfoot* (1985), 131 Ill. App. 3d 566, 569, 476 N.E.2d 1.) Plaintiff's petition for rehearing cannot serve as a substitute for a proper offer of proof.

■ Moreover, as we stated in our opinion, sufficient cause for plaintiff's discharge existed regardless of whether other officers in the department may have received different treatment. (*Jones v. Civil Service Com.* (1979), 80 Ill. App. 3d 74, 76, 399 N.E.2d 256; *Strobeck v. Illinois Civil Service Com.* (1979), 70 Ill. App. 3d 772, 778, 388 N.E.2d 912. But see *Olshock v. Village of Skokie* (N.D. Ill. 1976), 411 F. Supp. 257, *aff'd* (7th Cir. 1976), 541 F.2d 1254.) We adhere to our opinion that the board's decision to discharge plaintiff was not arbitrary, unreasonable or unrelated to the requirements of service.

For the foregoing reasons, plaintiff's petition for rehearing is denied.

LORENZ and MURRAY, JJ., concur.

## APPENDIX "A"

65. That the acts described in Counts I through XIV constitute a violation of Rule 310.24 of the Police Department of the City of Des Plaines which requires obedience to the laws of the State of Illinois.

66. That the acts described in Counts I through XIV constitute unbecoming conduct by a police officer of the City of Des Plaines in violation of Rule 310.02 of the Police Department of the City of Des Plaines.

67. That the acts described in Count XV constitute a violation of General Order 78—9 of the Police Department of the City of Des Plaines which prohibits Police Officers from leaving their post without permission.

68. That the acts described in Count XV constitute attempted theft in violation of Section 8—4(a) of the Criminal Code of the State of Illinois (Ill. Rev. Stat., 1983, Ch. 38, par. 8—4(a)).

69. That the acts described in Count XV constitute a violation of Rule 310.24 of the Police Department of the City of Des Plaines which requires obedience to the laws of the State of Illinois.

70. That the acts described in Count XV constitute unbecoming conduct by a police officer of the City of Des Plaines in violation of Rule 310.02 of the Police Department of the City of Des Plaines.

71. That the acts described in Counts I through XV constitute a substantial shortcoming which renders his continuance in office to be detrimental to the order, discipline and efficiency of the Police Department and good reason for the removal of TIMOTHY SHEEHAN as a Police Officer of the City of Des Plaines.

72. WHEREFORE, LEROY A. ALFANO, requests that TIMOTHY SHEEHAN be removed as a Police Officer of the City of Des Plaines in accordance with the provisions of Section 10.2.1—17 of the Board of Fire and Police Commissioners Act (Ill. Rev. Stat., 1983, Ch. 24, par. 10—2.1—17) and that TIMOTHY SHEEHAN be suspended without pay pending a hearing before the Board in accordance with the provisions of Section 10.1.1—17 of said Act.