THE DEPARTMENT OF LABOR, Plaintiff-Appellee, *v.* CEDRIC CHANEY, Defendant-Appellant (Illinois Civil Service Commission, Defendant).

First District (3rd Division)   No. 83—951

Opinion filed February 22, 1984.

Gail E. Mrozowski, of Cornfield and Feldman, of Chicago, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Kathryn A. Spalding, Assistant Attorney General, of counsel), for appellee.

JUSTICE WHITE delivered the opinion of the court:

The Illinois Civil Service Commission suspended defendant, Cedric Chaney, from his employment with plaintiff, the Department of Labor of the State of Illinois, for 90 days. On review sought by the Department, the circuit court of Cook County reversed the Commission's decision and remanded the cause with directions to enter an order of discharge. The issue before this court is the propriety of the circuit court's reversal of the Commission's decision.

The record shows that the Department of Labor filed the following charges in a discharge proceeding against Chaney, who was employed as a clerk by the Department:

"You [Chaney] are hereby discharged for conduct unbecoming a State employee. You collected unemployment insurance benefits

to which you were not entitled during the period from March 8, 1980 through April 12, 1980, while you were in pay status with the Illinois Bureau of Employment Security, Division of Unemployment Insurance [of the Department of Labor]. You knowingly withheld information on your certifications submitted for unemployment benefits in that you failed to report your employment and earnings during the above named period. This action caused you to obtain a total of $498.00 in unemployment insurance benefits to which you were not entitled for the weeks listed below:

| | |
|---|---|
| March 8, 1980 | $83.00 |
| March 15, 1980 | 83.00 |
| March 22, 1980 | 83.00 |
| March 29, 1980 | 83.00 |
| April 5, 1980 | 83.00 |
| April 12, 1980 | 83.00." |

At a hearing before a hearing officer of the Civil Service Commission, the following undisputed facts were admitted into evidence. Chaney was employed by the Department of Labor as a clerk beginning on March 3, 1980; however, on March 8, 1980, March 28, 1980, and April 13, 1980, Chaney signed "claim certification" forms certifying that he was unemployed for the two-week periods covered by the respective forms. In addition, Chaney endorsed and cashed payroll checks which were issued to him by the State on March 25, 1980, April 9, 1980, and April 24, 1980, and he also endorsed and cashed unemployment insurance benefit checks which were dated March 17, 1980, April 1, 1980, and April 15, 1980, and which were each in the amount of $166.

Chaney testified at the hearing. He admitted that he knowingly withheld information on the three certification forms. He explained that he had been unemployed prior to obtaining his position with the Department of Labor and that he submitted the certification forms in order to recoup benefits which he believed to be due to him for the period of his unemployment. In this regard, Chaney testified that he was employed by the Department of Administrative Services until January 1980, but that he could not remember the exact date. Chaney also testified that after he had recouped the unemployment benefits to which he thought he was entitled, he submitted a form which stated that he was employed, and that after he became aware that he had received unemployment benefits to which he was not entitled, he entered into a written agreement with the Department of Labor whereby he agreed to repay $498 in benefits in monthly installments

of $41.50.

Norman Harelik, supervisor of the internal investigations unit of the Unemployment Insurance Division of the Bureau of Employment Security of the Department of Labor, testified that Chaney was not entitled to unemployment benefits for the weeks listed in the written charges for discharge; that according to a computer record Chaney had stated that his previous employment with the Department of Administrative Services had ceased on February 1, 1980; and that Chaney first applied for unemployment benefits on February 19, 1980. Harelik further testified that it is not proper for a claimant of unemployment benefits to recoup benefits that he should have but did not receive by submitting claim certifications containing false information, and that there was a procedure for back-dating claims for unemployment benefits.

There was also testimony at this hearing by Frank Sellers, the manager of the labor-management relations division of the Bureau of Employment Security, concerning the Department of Labor's policy in cases where employees had fraudulently received unemployment benefits. According to him, the Department's general unwritten policy is to impose a one-week suspension for each week of benefits wrongfully received and to discharge an employee who has improperly received more than four weeks of benefits. The Department would, however, consider mitigating circumstances, such as the employee's work record, in determining whether the sanction indicated by the general policy should be reduced. Sellers specifically testified that if an employee received six weeks of benefits to which he was not entitled, the general policy would be to discharge the employee. With regard to this general policy, personnel action forms concerning the discipline imposed on five other employees who had improperly received unemployment benefits were introduced into evidence. This evidence is summarized in the following chart:

| Employee | Weeks of Benefits | Amount of Benefits | Discipline | Effective date |
|---|---|---|---|---|
| J. Anderson | 1 | $ 70 | 7 day suspension | 6-7-82 |
| M. Smith | 3 | 192 | 7 day suspension | 5-28-82 |
| M. Geredine | 3 | 405 | 21 day suspension | 1-5-82 |
| J. Washington | 3 | 426 | 7 day suspension | 6-11-82 |
| E. Clark | 4 | (unknown) | 14 day suspension | 11-18-80 |

None of these forms indicated that mitigating circumstances had been considered in imposing the suspensions. Testimony by Sellers establishes that Clark was disciplined before the present policy went into effect. However, it should be noted that the previous policy of the Department was to impose discharge as a sanction for improperly receiving unemployment benefits for one week. That policy clearly was not followed in Clark's case. More importantly, the personnel action forms of Smith and Washington show that these employees received suspensions less severe than the suspensions called for by the general policy, even though their forms did not indicate that mitigating circumstances were present.

After the hearing, the Civil Service Commission's hearing officer found that Chaney "falsely certified as to his employment status and received unemployment benefits during the period of time that he was, in fact, employed by the State" and that the written charges for discharge had been proved. She recommended that Chaney be discharged. The Commission agreed with the hearing officer that the written charges for discharge had been proved; however, it ordered a 90-day suspension rather than discharge. The Commission reasoned: "[I]t is apparent from the record that the policy of the Department with regard to levying penalties on its employees for claiming undue unemployment benefits is not evenly or consistently applied." As noted earlier, the circuit court reversed the Commission's decision.

■■ Final decisions of the Civil Service Commission are subject to judicial review pursuant to the provisions of the Administrative Review Law (Ill. Rev. Stat. 1981, ch. 110, par. 3—101 et seq.). (Ill. Rev. Stat. 1981, ch. 127, par. 63b111a.) The scope of judicial review, however, is limited. In *Department of Mental Health & Developmental Disabilities v. Civil Service Com.* (1981), 85 Ill. 2d 547, 550-51, 426 N.E.2d 885, our supreme court stated:

"A court's scope of review of an administrative agency's decision regarding discharge is a two-step process. First, the court must determine if the agency's findings of fact are contrary to the manifest weight of the evidence. [Citation.] In applying this rule of law, the following statutory provision must be considered: 'The findings and conclusions of the administrative agency on questions of fact shall be held to be prima facie true and correct' (Ill. Rev. Stat. 1977, ch. 110, par. 274 [now codified as Ill. Rev. Stat. 1981, ch. 110, par. 3—110]). ***

The second step in the court's analysis is to determine if the findings of fact provide a sufficient basis for the agency's conclusion that cause for discharge does or does not exist."

See also *Starkey v. Civil Service Com.* (1983), 97 Ill. 2d 91, 97, 454 N.E.2d 265; *Kloss v. Board of Fire & Police Commissioners* (1983), 96 Ill. 2d 252, 257-58, 449 N.E.2d 845; *Walsh v. Board of Fire & Police Commissioners* (1983), 96 Ill. 2d 101, 105, 449 N.E.2d 115; *Sutton v. Civil Service Com.* (1982), 91 Ill. 2d 404, 409, 438 N.E.2d 147.

■ Neither the Department nor Chaney has argued, either in the trial court or in this court, that the Commission's finding that the charges for discharge had been proved is contrary to the manifest weight of the evidence. They do, however, dispute the validity of the Commission's finding that the policy of the Department concerning the imposition of penalties on employees who claim undue unemployment benefits is not evenly or consistently applied. In our opinion, this finding is not against the manifest weight of the evidence. As noted, the record contains the personnel action forms for four employees suspended under the present policy. Two of these employees received only a one-week suspension even though they had improperly received three weeks of benefits. The policy called for a three-week suspension of both employees, and their forms did not indicate the presence of mitigating circumstances. This evidence clearly supports a finding that the Department's policy was "not evenly or consistently applied."

■ ■ Having concluded that the Commission's findings of fact are not contrary to the manifest weight of the evidence, the critical issue becomes whether the findings of fact provide a sufficient basis for the Commission's conclusion that cause for discharge does not exist.

Section 11 of the Personnel Code (Ill. Rev. Stat. 1981, ch. 127, par. 63b111) prohibits the discharge of employees "except for cause," and "cause" has been defined as " 'some substantial shortcoming which renders [the employee's] continuance in his office or employment in some way detrimental to the discipline and efficiency of the service and something which the law and a sound public opinion recognize as a good cause for his not longer occupying the place.' " *(Walsh v. Board of Fire & Police Commissioners* (1983), 96 Ill. 2d 101, 105; *Fantozzi v. Board of Fire & Police Commissioners* (1963), 27 Ill. 2d 357, 360, 189 N.E.2d 275.) The question of whether cause for discharge does or does not exist should generally be determined by the administrative agency *(Department of Mental Health & Developmental Disabilities v. Civil Service Com.* (1981), 85 Ill. 2d 547, 552), and considerable deference must be afforded to an administrative finding of cause for discharge or lack thereof. *(Walsh v. Board of Fire & Police Commissioners* (1983), 96 Ill. 2d 101, 106.) Accordingly,

"the agency's decision as to cause will not be reversed unless it is arbitrary, unreasonable, or unrelated to the requirements of service." *Department of Mental Health & Developmental Disabilities v. Civil Service Com.* (1981), 85 Ill. 2d 547, 552.

■ The policy of the Department, itself, recognizes that the improper receipt of unemployment benefits does not disqualify a person for employment with the Department. Rather, the policy is only to discharge an employee who has received more than four weeks of benefits improperly, if mitigating circumstances are absent. While we do not here question the validity of such a policy, we observe that Frank Sellers, the manager of the labor-management relations division, when asked at the hearing "why four weeks is the cutoff," stated that he did not know. More importantly, the finding of fact that the policy is not evenly or consistently applied clearly suggests that the Department does not follow the policy in every case involving the discipline of an employee for the improper receipt of unemployment benefits. Given Chaney's testimony concerning his receipt of unemployment benefits and the Commission's finding of uneven and inconsistent application of the Department's unwritten policy, we cannot say that the Commission, in opting for a 90-day suspension rather than discharge, acted unreasonably or arbitrarily, or selected a type of discipline unrelated to the needs of the service. The fact that Chaney received unemployment benefits improperly for six weeks, more weeks than any of the other employees who were suspended for similar conduct, is, in our opinion, not a sufficient reason to disturb the Commission's decision.[1]

For the aforementioned reasons, the judgment of the circuit court of Cook County is reversed and the Commission's order of suspension is affirmed.

Judgment reversed, order affirmed.

RIZZI, P.J., and McNAMARA, J., concur.

---

[1]In this regard, we note that J. Washington received unemployment benefits of $426 to which he was not entitled, only $72 less than Chaney. Washington only received a seven-day suspension.