HENRY BROWN, JR., Plaintiff-Appellee, v. THE CIVIL SERVICE COM-
MISSION, Defendant (The Industrial Commission, Defendant-Appellant).

First District (4th Division)   No. 84—185

Opinion filed May 2, 1985.

Neil F. Hartigan, Attorney General, of Springfield (Thomas P. Marnell, Assistant Attorney General, of Chicago, of counsel), for appellant.

Cornfield & Feldman, of Chicago (Gail E. Mrozowski, of counsel), for appellee.

JUSTICE LINN delivered the opinion of the court:

Plaintiff, a court reporter with the Industrial Commission, was charged with violating section 16 of the Workers' Compensation Act (Ill. Rev. Stat. 1981, ch. 48, par. 138.16) by intentionally overbilling for transcripts in 13 instances. Adopting the findings of the hearing officer, the Civil Service Commission found plaintiff guilty and discharged him from his position.

On judicial review, the circuit court of Cook County found the sanction of discharge too severe and remanded the case to the Commission with instructions to reinstate plaintiff and to impose a lesser sanction. On remand, the Commission ordered plaintiff reinstated and imposed a penalty of 120 days' disciplinary suspension. The circuit court affirmed the modified penalty, and the Commission now appeals.

We affirm the decision of the circuit court.

BACKGROUND

Plaintiff, Henry Brown, Jr., has been employed as a court reporter by defendant, Illinois Industrial Commission (Commission), since June 1979. In April 1984, defendant initiated discharge proceedings against plaintiff, charging that plaintiff had intentionally overbilled for transcripts in 13 instances during the months of September, October, November and December 1981, in direct violation of section 16 of the Workers' Compensation Act (Ill. Rev. Stat. 1981, ch. 48, par. 138.16). Section 16 provides that an official court reporter shall take and furnish a transcript of proceedings "upon payment to him at the rate of $1.00 per page for the original and 35 cents per page for each copy of such transcript." The statute further provides that photostatic copies of exhibits shall be extra.

A hearing on plaintiff's discharge began on May 4, 1982, and concluded on August 30, 1982. Plaintiff testified that he understood the statutory rates to be guidelines which he used as a base rate. In addition to the base rate, he would add his actual costs for Xeroxing and typing. He would also add additional charges, when appropriate, for

postage or for an interim or expedited transcript. Plaintiff never denied throughout the hearing his knowledge that the addition of costs to his bills was in excess of the statutory rate, and he admitted that in each case he included the cost of preparing the transcript. When confronted with the allegations of overbilling, plaintiff apologized, stated that he knew now that it was wrong and that he would not do it again.

Other testimony adduced at the disciplinary hearing revealed that at the time plaintiff was hired in 1979, the situation regarding billing by court reporters was "deplorable." There were no manuals or written directives instructing on employee procedures or court reporter billing procedures. There was no established policy regarding charges for expedited transcripts or interim transcripts, for which many of the reporters charged an additional amount. When plaintiff was hired, he was given verbal directions about the page rate and was informed as to the lack of policy regarding charging for exhibits. Plaintiff received information about the customary, on-going billing practices from other court reporters, notably one of whom later resigned prior to the instigation of discharge proceedings based on overbilling.

Jack Ellis, the supervisor for all court reporters employed by the Illinois Industrial Commission, testified that he was appointed in 1979 to put a halt to the abuses in the court reporting system. After investigating the billing practices of nearly every court reporter in Illinois, Ellis concluded that reporters were charging other than the statutory rate for expedited transcripts; some reporters were charging more than the suggested rate for exhibits; and, based thereon, other court reporters had been and would be disciplined. He further concluded that many reporters "just practically did whatever they wanted to do." During and after the investigation prompted by plaintiff's conduct, Ellis issued memoranda to the court reporters providing guidelines for rates in excess of those set by statute or policy.

Mollie Goodman, a personnel officer employed by the Industrial Commission, testified that the position held by plaintiff was covered by a collective bargaining agreement and governed by the Department of Personnel Rules, both of which call for a system of progressive discipline. Goodman stated that the normal procedure for disciplinary actions is oral reprimand for the first infraction, written reprimand for the second, suspension for the third, and discharge for the fourth. She stated that prior to the instant matter, she had received no complaints about plaintiff and that he had received no disciplinary action prior to the institution of discharge proceedings.

Rebecca Schneiderman, the chairman of the Illinois Industrial

Commission and the person who ultimately made the decision to discharge plaintiff, testified that when she confronted plaintiff with the charges of overbilling, he told her that another court reporter had been doing it, that he did not realize it was wrong, and that he would not do it again. Schneiderman acknowledged that there are no provisions in the statute regarding exhibits, expedited transcripts, or interim transcripts. She further stated that for some time, the Commission had been receiving a number of complaints from attorneys representing both workers and employers about the billing practices of court reporters. The complaints were wide-ranging and included assertions that the reporters were overcharging the per-page rate and charging a large amount for the Xeroxing of exhibits. She stated that the complaints "continued and continued" until a full scale investigation was initiated, which investigation included the Attorney General's office and several other agencies throughout the State.

In her report, the hearing officer for the Civil Service Commission notes that there were no guidelines established by the Commission regarding what procedures should be taken with expedited or interim transcripts until November 1981, and at that time the only guidance given was that a particular fee arrangement with an attorney should be in writing. She further noted that respondent claimed that he had been given an insufficient amount of guidance and orientation as to permissible billing rates when he began his employment with the Commission. She stated that the Commission did not, however, apparently become aware of the "practice of overbilling" until recently, and that there therefore would have been no reason for the supervisor of the court reporters to feel that an indoctrination was necessary.

After acknowledging plaintiff's assertion that he should be subject to the policy of progressive discipline, the hearing officer nevertheless concluded that plaintiff's discharge should be upheld. The Civil Service Commission adopted the findings and recommendations of the hearing officer and discharged plaintiff.

Plaintiff filed a complaint in the circuit court of Cook County for judicial review of the administrative decision. The trial judge found that while the record supported the charges brought against plaintiff, and the findings of the hearing officer were not against the manifest weight of the evidence, plaintiff's conduct was not of such a nature as to warrant discharge rather than suspension. The trial court noted that the Commission had in place a policy of progressive discipline and that this instance was the first blemish on the plaintiff's employment record. The court concluded that the penalty imposed on plaintiff was too severe and remanded the case to the Civil Service Com-

mission for imposition of a penalty less than discharge.

Pursuant to the order of the circuit court, the Civil Service Commission reinstated plaintiff with a penalty of 120 days' disciplinary suspension, and such action was affirmed by the circuit court. Defendant now appeals from the orders for reinstatement and remand for imposition of a lesser sanction.

OPINION

The scope of review of an administrative agency's decision regarding discharge is generally a two-step process involving first, a manifest-weight standard, and second, a determination of whether the findings of fact provide a sufficient basis for the agency's conclusion that cause for discharge does or does not exist. (*Department of Mental Health & Developmental Disabilities v. Civil Service Com.* (1981), 85 Ill. 2d 547, 426 N.E.2d 885.) Our review of the instant case involves only the second prong of the two-step process, namely, whether under the evidence presented to the Civil Service Commission there was sufficient cause to discharge plaintiff from his position as a court reporter. In light of plaintiff's conduct, his employment history, and the policy of progressive discipline in force at the agency at the time of his discharge, we find that the sanction of discharge was unreasonably severe.

■■■ Unlike findings of fact, an agency's determination of cause to discharge is not *prima facie* true and correct and is subject to judicial review. (*Fox v. Civil Service Com.* (1978), 66 Ill. App. 3d 381, 383 N.E.2d 1201.) Manifest weight of the evidence is not the applicable standard of review, and the Commission's determination may be overturned if the decision is arbitrary, unreasonable, or unrelated to requirements of service. (*Sutton v. Civil Service Com.* (1982), 91 Ill. 2d 404, 438 N.E.2d 147.) The question, then, before this reviewing court is the reasonableness of the sanction imposed by the Civil Service Commission and not the correctness of the Commission's findings or reasoning. A court of review may overturn a sanction imposed by an administrative agency where that agency, in opting for a particular sanction, acted unreasonably. *Sutton v. Civil Service Com.* (1982), 91 Ill. 2d 404, 438 N.E.2d 147; *Feliciano v. Illinois Racing Board* (1982), 110 Ill. App. 3d 997, 443 N.E.2d 261.

The Department of Personnel Rules applicable to the Industrial Commission and in force at the time discharge proceedings were initiated against plaintiff include Rule 2—626, which provides as follows:

"*PROGRESSIVE CORRECTIVE DISCIPLINE*: Unless grounds clearly are present warranting immediate discharge or

suspension pending decision on discharge, employees shall be subject to corrective discipline, progressively utilizing counseling, warnings and/or suspensions, as the facts and circumstances dictate, prior to discharge. If an employee's work or work-related conduct remains unacceptable after the application of progressive corrective discipline, such employee may be discharged in accordance with the appropriate rules below."

■■■ In disciplinary proceedings, a public body must comply with its own rules, and an employee being disciplined is entitled to rely upon those rules. (*Keefer v. Trizna* (1978), 64 Ill. App. 3d 844, 381 N.E.2d 1049.) Once having established rules regarding removals, a civil service commission is thereafter bound by them, and this is true even where a commission imposes on itself, through its own rules, procedural duties beyond those required by statute. (*Morsovillo v. Civil Service Com.* (1981), 101 Ill. App. 3d 406, 428 N.E.2d 540.) Administrative rules and regulations have the force and effect of law, and, like statutes, enjoy a presumption of validity. (*People v. Samel* (1983), 115 Ill. App. 3d 905, 451 N.E.2d 892.) When reviewing administrative rules and regulations, a court will not set them aside unless they are clearly arbitrary, unreasonable or capricious. *Aurora East Public School District No. 131 v. Cronin* (1981), 92 Ill. App. 3d 1010, 415 N.E.2d 1372.

We do not find Rule 2—626 to be either arbitrary, unreasonable or capricious. Rule 2—626 mandates the utilization of progressive disciplinary procedures. It is undisputed that Rule 2—626 was in force and effect at the time discharge proceedings were initiated against plaintiff. It is further undisputed that the policy in effect at the Industrial Commission was one of progressive discipline, which included a normal procedure of increasingly more severe sanctions beginning with an oral reprimand and progressing through actions of written reprimand, suspension, and finally discharge. It is further undisputed that prior to initiation of the instant discharge proceedings, plaintiff had received neither oral nor written reprimands nor had any type of suspension been imposed. In addition, as the hearing officer acknowledged, plaintiff's prior disciplinary record was "minimal."

■■ It appears clear from these undisputed facts that the Industrial Commission, in moving directly to the initiation of discharge proceedings absent any prior reprimand or suspension, failed to follow its own rule, namely, Rule 2—626. There is no evidence that any form of progressive disciplinary action was taken towards plaintiff. Because Rule 2—626 and the established policy of progressive discipline are neither arbitrary nor unreasonable, the Commission was bound by its

rules, plaintiff had a right to rely on those rules, and we may not here set them aside.

"Cause" for discharge by an administrative agency is a substantial shortcoming which renders an employee's continuance in office in some way detrimental to the discipline and efficiency of the service and which law and sound public policy recognize as good cause for his no longer holding his position. (*Batley v. Kendall County Sheriff's Department Merit Com.* (1981), 99 Ill. App. 3d 622, 425 N.E.2d 1201.) Based on this standard, it is logical and almost necessary to conclude that if an employee's conduct is not detrimental to the discipline and efficiency of the service, there is no "cause" for discharge. Whether the conduct in question is detrimental to the discipline and efficiency of the service would appear to be directly dependent on exactly how disciplined and efficient the service is at the time the conduct occurs.

At the time the conduct in question occurred, the status of the court reporting practices at the Industrial Commission, at least those practices regarding billing for transcripts, was "deplorable." When plaintiff was hired, neither manuals nor written directives instructing court reporters on billing practices were provided. There was no established policy regarding charges for expedited transcripts or interim transcripts, for which many of the reporters charged an additional amount. New employees commonly received word-of-mouth information from seasoned reporters as to what sorts of practices were tolerated and currently being used. Abuses in the court reporting system were commonplace, and reporters exercised a great deal of discretion in the rates they charged for exhibits. Complaints from attorneys were frequent and wide-ranging and included complaints about billing practices.

This evidence clearly shows that at the time the conduct in question occurred, the policy that dictated the discipline and efficiency of the billing practices by court reporters at the Commission was not evenly and consistently applied. (*Department of Labor v. Chaney* (1984), 122 Ill. App. 3d 197, 460 N.E.2d 820.) This inconsistency encompassed not only the policy governing the employees' conduct, but also the policy governing the imposition of penalties on employees who committed misconduct. The 13 instances of overbilling by plaintiff amidst this general state of inconsistency, while certainly not acceptable, can hardly be viewed as so detrimental to the discipline and efficiency of the service as to warrant discharge. In light of plaintiff's employment history, a factor that does have bearing upon the issue of cause for discharge (*Fox v. Civil Service Com.* (1978), 66 Ill. App. 3d 381, 383 N.E.2d 1201), and his willingness to cooperate with the ser-

vice once the proper procedures were made known to him, his continued employment at the Commission would seem neither to undermine its discipline and efficiency nor to be violative of any public policy. Moreover, the unevenness and inconsistency of the policy governing billing procedures and penalties imposed for overbilling renders the policy of progressive discipline even more indispensable and the agency's failure to follow it even less excusable.

Considering all of the above, we find that the conduct at issue was not of the type where "grounds clearly are present warranting immediate discharge" and that, accordingly, the sanction imposed in the instant case was too severe.

For these reasons, we affirm the decision of the trial court, reversing the decision of the Civil Service Commission and remanding for imposition of a lesser penalty.

Affirmed.

JIGANTI, P.J., and ROMITI, J., concur.