STEVEN SCHINKEL, Plaintiff-Appellant, v. BOARD OF FIRE AND PO-LICE COMMISSION OF THE VILLAGE OF ALGONQUIN *et al.*, Defendants-Appellees.

Second District    No. 2—93—0946

Opinion filed May 26, 1994.

Burman & Manning, of Chicago (Richard L. Manning, of counsel), for appellant.

Thomas F. McGuire, of Thomas F. McGuire & Associates, Ltd., of Long Grove, for appellee Donald Brewer.

Valeree D. Marek, of Zukowski, Rogers, Flood & McArdle, of Crystal Lake (David W. McArdle, of counsel), for other appellees.

JUSTICE PECCARELLI delivered the opinion of the court:

Plaintiff, Steven Schinkel, appeals from an order of the circuit court of McHenry County which affirmed the decision of defendant, the Board of Fire and Police Commission (Board) of the Village of Algonquin (Village), to terminate plaintiff's employment as a lieutenant in the Algonquin police department (APD). In addition to the Board and its individual members, plaintiff's complaint for administrative review named Village president, Donald Brewer (hereinafter the Mayor), as a defendant.

On appeal, plaintiff contends that: (1) the Board lacked jurisdiction to hear or decide the complaint against plaintiff because the Mayor filed the complaint rather than the APD chief (Chief) as required by the Algonquin Police Commission Rules and Regulations (Rules); (2) the Board erred when it based certain findings on the wrong standard of proof in violation of the Rules; and (3) the circuit court erred when it denied plaintiff's motion for sanctions.

## BACKGROUND

An incident which occurred on March 17, 1990, precipitated the complaint against plaintiff, who was a 17-year veteran of the APD at the time, and second in command to the Chief. On that date, Molly Hudson (Hudson), who was 20 years old, committed suicide in plaintiff's residence by shooting herself in the head with plaintiff's gun while plaintiff was in a nearby room. Shortly after Hudson's death, a citizen's committee, which called itself "Concerned Citizens for Algonquin Police Reform," began documenting alleged incidents of Algonquin police wrongdoing. The committee viewed the incident involving Hudson as the "last straw" in a series of incidents of police wrongdoing.

On June 13, 1990, the committee presented 27 allegations of police wrongdoing to the Board. The committee also presented the Board with petitions signed by approximately 800 area citizens and a letter from the committee demanding that the police commission make immediate changes to improve the APD. The letter stated that the committee acted because it wanted to express a general concern about improper conduct by APD officers.

The allegations of police wrongdoing presented to the Board involved several APD officers, including plaintiff. On July 6, 1990, the Mayor filed a seven-count complaint against plaintiff with the Board. The counts in the complaint were based on some of the committee's allegations involving plaintiff. The Mayor subsequently amended count V of the complaint and added count VIII.

Each of the eight counts in the amended complaint against plaintiff described conduct which allegedly satisfied the "cause" clause of the board of fire and police commissioners act (Act) (65 ILCS 5/10—2.1—1 et seq. (West 1992)). The cause clause provides, in relevant part: "[N]o officer or member of the fire or police department of any municipality subject to this Division 2.1 shall be removed or discharged except for cause, upon written charges, and after an opportunity to be heard in his own defense." 65 ILCS 5/10—2.1—17 (West 1992).

Each of the eight counts also charged plaintiff with the violation of one or more APD rules or regulations (police rules). These alleged violations included: conduct unbecoming a police officer; inattention to duty; and incapacity or inefficiency in the service.

Count I of the complaint against plaintiff alleged that plaintiff failed immediately to notify the Chief after plaintiff learned that in December 1988 Hudson, while employed as an APD dispatcher, took another APD officer's gun without that officer's permission and that Hudson used the gun in an unsuccessful attempt to commit suicide.

Count I also alleged that plaintiff allowed Hudson to continue working as an APD dispatcher after this incident.

Count II alleged that in the summer of 1989 plaintiff, while driving an unmarked APD vehicle, stopped the car of an off-duty APD probationary patrolman shortly after the probationary patrolman had seen Hudson socially. Count II implied that plaintiff improperly used his position as a lieutenant in the APD to influence the probationary patrolman not to date Hudson when he told the probationary patrolman that the patrolman had a "serious f------ problem."

Count III alleged that in May 1989, in a bar, plaintiff made physical contact of an insulting or provoking nature with Hudson by screaming at her and poking her in the chest. Count III charged that this conduct, in addition to violating the cause clause of the Act and police rules, violated the following assault and battery provisions of the Criminal Code (Ill. Rev. Stat. 1991, ch. 38, par. 12—1 (now 720 ILCS 5/12—1 (West 1992)); Ill. Rev. Stat. 1991, ch. 38, par. 12—3 (now 720 ILCS 5/12—3 (West 1992))).

Count IV alleged that in January 1989, in a business establishment in Algonquin, plaintiff allowed Hudson to possess and to be under the influence of an alcoholic beverage although Hudson was under the age of 21 years.

Count V alleged that in the fall of 1988, in a business establishment in Schaumburg, plaintiff purchased an alcoholic drink for Hudson, who was under the age of 21 years, and offered to purchase an alcoholic drink for another female who was also under the age of 21 years.

Count VI alleged that on numerous occasions during 1988 and 1989, at a business establishment in Carpentersville, plaintiff purchased alcoholic drinks for Hudson who was under the age of 21 years.

Count VII alleged that on March 17, 1990, plaintiff allowed Hudson to have access to his home and his gun and that Hudson used plaintiff's gun to commit suicide when plaintiff was aware that Hudson had previously taken another gun and attempted to commit suicide with it, as alleged in count I.

Count VIII alleged that in May or June of 1989, in a business establishment in East Dundee, plaintiff purchased an alcoholic beverage for Hudson who was under the age of 21 years, and allowed Hudson to be in possession of alcohol. Count VIII charged that in addition to violating the cause clause of the Act and police rules plaintiff's conduct also violated a section of the Liquor Control Act of 1934 (Ill. Rev. Stat. 1991, ch. 43, par. 93.9 *et seq.* (now 235 ILCS 5/1—1 *et seq.* (West 1992))) which provides, in relevant part:

"No person, after purchasing or otherwise obtaining alcoholic liquor, shall sell, give or deliver such alcoholic liquor to another person under the age of 21 years, except in the performance of a religious ceremony or service. Whoever violates the provisions of this paragraph of this subsection (a) is guilty of a Class A misdemeanor." Ill. Rev. Stat. 1991, ch. 43, par. 131(a) (now 235 ILCS 5/6—16(a) (West 1992)). (We note that the complaint cited this provision as "Illinois Revised Statutes, chapter 43, section 121(a)," which appears to be a scrivener's error.)

The Board conducted a hearing on the complaint against plaintiff. The hearing consisted of multiple sessions over a three-day period. At the hearing, various witnesses, including plaintiff, testified and were subjected to cross-examination. After the hearing, the Board found that the Mayor had proved counts I, II, III, VII, and VIII by a preponderance of the evidence. After an additional hearing to consider factors in aggravation and mitigation, the Board ordered plaintiff's termination from his employment with the APD, effective August 31, 1990.

On September 27, 1990, plaintiff filed a complaint in the circuit court for administrative review of the Board's decision. Plaintiff sought review under the Administrative Review Law (Ill. Rev. Stat. 1991, ch. 110, par. 3—101 *et seq.* (now codified, as amended, at 735 ILCS 5/3—101 *et seq.* (West 1992))).

Plaintiff's complaint contended that the Board's decision was "erroneous, illegal and void." Plaintiff's complaint listed 19 reasons to support plaintiff's contentions. Among these reasons were a jurisdiction issue which plaintiff stated as follows:

"(b) the defendant Board did not have jurisdiction over plaintiff or the matter in controversy because, in violation of its own rules of procedure, it permitted the defendant Village President to file the complaint, thereby turning a civil service proceeding into a political firing;"

and a standard-of-proof issue which plaintiff stated as follows:

"(m) the defendant Board's decision must be overturned because the complainant did not sustain his burden of prooof [*sic*] in that the wrong burden of proof standard was applied by the defendant Board in reviewing the evidence and testimony presented."

Appended to plaintiff's complaint as "Exhibit A" was a copy of the Rules, ostensibly as adopted November 15, 1981. Along with his answer to plaintiff's complaint, the Mayor filed a motion to strike exhibit A from plaintiff's complaint.

On May 23, 1991, plaintiff filed a motion to supplement the record and for sanctions. Plaintiff sought to present evidence tending to show that, contrary to defendants' position, the Rules were valid.

Plaintiff's motion also requested the imposition of sanctions against the Board and its attorneys on the ground of their alleged duplicity with regard to establishing whether the Rules were valid.

On July 11, 1991, the circuit court took the Mayor's motion to strike exhibit A and plaintiff's motion to supplement the record and for sanctions under advisement. The circuit court also issued an agreed order waiving oral argument and taking the cause under advisement for decision based on the briefs and memoranda previously filed.

On July 8, 1993, almost two years later, the circuit court issued an order and memorandum opinion. Without elaboration, the court denied the Mayor's motion to strike exhibit A from plaintiff's complaint and denied plaintiff's motion to supplement the record and for sanctions. The court also addressed and discussed the specific issues raised by plaintiff's complaint including the jurisdiction issue and the standard-of-proof issue. With respect to the jurisdiction issue, the court found that "Plaintiff has not established by evidence in the record any prejudice to the Plaintiff by the procedure followed by allowing the Village President to file the Complaint." With respect to the standard-of-proof issue, the circuit court found that plaintiff failed to establish that the Board's use of the preponderance-of-the-evidence standard was improper.

The circuit court affirmed the Board's decision and dismissed plaintiff's complaint with prejudice. Plaintiff's appeal followed. On appeal, plaintiff again raises the jurisdiction and standard-of-proof issues.

## JURISDICTION

Initially, we set out the general principles governing our review. The Act provides that the Administrative Review Law applies to and governs the judicial review of final administrative decisions of a board of police commissioners. (65 ILCS 5/10—2.1—17 (West 1992).) Under the Administrative Review Law, a court's review extends "to all questions of law and of fact presented by the entire record before the court." (735 ILCS 5/3—110 (West 1992).) Where the questions before the court are ones of law, the administrative agency's findings are not binding on the court. *DiFoggio v. Retirement Board of the County Employees Annuity & Benefit Fund* (1993), 156 Ill. 2d 377, 381.

Plaintiff first contends that the Board lacked jurisdiction to hear or decide the complaint against plaintiff because the Chief did not file the complaint as required by the Rules. Plaintiff raised this issue before the Board prior to the hearing on the complaint against

plaintiff by filing a motion to dismiss the complaint. Plaintiff argued that the complaint violated Rule II(a) of chapter V of the Rules, which states:

"(a) CHARGES. In all cases written charges shall be filed by the Chief of Police in quintuplicate, setting forth a plain and concise statement of the facts upon which the complaint is based."

Plaintiff construed Rule II(a) to mean that if anyone other than the chief filed a complaint, then the Board was without jurisdiction to hear or decide the complaint. Plaintiff argued that because the Chief did not file the complaint against plaintiff, then under Rule II(a) the Board did not have jurisdiction to hear or decide the complaint against plaintiff.

The Mayor responded by arguing that the Rules did not apply because a publication requirement in the Act (65 ILCS 5/10—2.1—5 (West 1992)) had not been satisfied and the Rules, including Rule II(a), were therefore invalid. The Board subsequently stated that an investigation of its records did not reveal any evidence that the publication requirement for the Rules had been satisfied. For that reason, the Board effectively determined that the Rules were invalid and denied plaintiff's motion to dismiss. The Board also determined that it had jurisdiction to proceed with the hearing under the Act.

After the hearing, while his complaint was pending before the circuit court, plaintiff discovered that the Rules had in fact been published and were valid. The parties now agree that the Rules are and were valid.

On appeal, plaintiff again maintains that the Board had no authority to proceed with the hearing on a complaint brought in violation of Rule II(a). Plaintiff argues that once the Rules were adopted they became law and defined due process so that a breach of Rule II(a) was a breach of due process. Plaintiff further argues that the Board's breach of Rule II(a) by hearing a complaint filed by the Mayor instead of the Chief turned a civil service proceeding into a political firing because the Mayor exercised undue influence on the Board.

The Board responds that evidence of the validity of the Rules was not in the administrative record and therefore the Board's decision to forego the Rules and fall back on the Act for jurisdiction was proper. The Board contends that because the Act does not specify who must file a complaint the filing by the Mayor was proper. The Board also responds that even if the Rules were valid, the failure to follow Rule II(a) with respect to the requirement that the Chief file the complaint does not necessitate a reversal unless plaintiff demonstrates that he was prejudiced by the Rule violation and plaintiff has not done that here.

It is well established that a court reviewing the actions of an administrative agency under the Administrative Review Act may not consider evidence not in the record when the administrative agency acted. (735 ILCS 5/3—110 (West 1992); *Pipe Trades, Inc. v. Rauch* (1954), 2 Ill. 2d 278, 291; *Burgess v. Board of Fire & Police Commissioners* (1991), 209 Ill. App. 3d 821, 827.) Here, the Board denied plaintiff's motion to dismiss which was based on plaintiff's contention of a breach of Rule II(a). The Board then proceeded to hear and act on the complaint against plaintiff. The Board took these actions after determining that there was no evidence in the record to show that the Rules had been publicized and published, statutory requirements for the validity of the Rules. Based on the record before it, which indicated that the Rules were invalid, the Board properly took these actions.

Nonetheless, because we now know that the Rules were valid, we have the authority to remand this cause for the taking of additional evidence as to the validity of the Rules. (735 ILCS 5/3—111(a)(7) (West 1992).) However, that is not necessary with respect to the alleged Rule II(a) violation, because we have determined that any error arising from the violation of Rule II(a) was not reversible error.

The discharge of a police officer by a board of police commissioners is governed by the Act and rules made pursuant to the Act. The Act provides that "[t]he Board shall make rules (1) to carry out the purpose of this Division 2.1, and (2) for appointments and removals in accordance with the provisions of this Division 2.1." 65 ILCS 5/10—2.1—5 (West 1992).

However, the failure to adopt rules pursuant to the Act does not deprive a Board of jurisdiction to hear and decide complaints under the Act. (*Westby v. Board of Fire & Police Commissioners* (1977), 48 Ill. App. 3d 388, 391.) The Act provides that when a complaint is filed against a police officer, "[t]he board of fire and police commissioners shall conduct a fair and impartial hearing of the charges" and, if the officer is found guilty, "the board may discharge him." (65 ILCS 5/10—2.1—17 (West 1992).) The Act does not specify that any particular person must file the complaint. Thus, if the Board had not adopted rules, as it determined from the record before it, under the plain language of the Act, the Board would have had jurisdiction to hear and decide the complaint, even if it was filed by the Mayor.

Moreover, courts have held that when a board has adopted rules pursuant to the Act, the failure to comply with those rules does not necessarily cause the board to lose its jurisdiction. (See, *e.g.*, *Flynn v. Board of Police & Fire Commissioners* (1975), 33 Ill. App. 3d 394, 397.) Where the administrative action is within the limitation set forth by

the legislature in the authorizing statute and the plaintiff suffers no great prejudice by such noncompliance with the board's rules, reversal is not required. (*Morsovillo v. Civil Service Comm'n* (1981), 101 Ill. App. 3d 406, 408.) When a board errs by failing to adopt rules or by adopting rules and failing to observe them, the question in determining if the error was reversible is whether the error prejudiced the plaintiff and prevented him from receiving the fair and impartial hearing to which he is entitled by the Act. *Westby*, 48 Ill. App. 3d at 392.

■ Here, the record fails to substantiate plaintiff's contention that he did not receive a fair and impartial hearing, or that he was somehow otherwise denied due process because the Mayor filed the complaint instead of the Chief in violation of Rule II(a). Plaintiff's primary argument that he was denied due process rests on his assumption that when the Mayor, rather than the Chief, filed the complaint against plaintiff, the Mayor thereby exerted political influence on the members of the Board to find plaintiff guilty of the charges in the complaint. However, plaintiff's argument fails to set out a specific claim of partiality against any Board member. Plaintiff's argument therefore fails to overcome the presumption of impartiality in those serving as adjudicators on police commissions because it does not show in the record that the administrative proceeding was either tainted by dishonesty or contained an unacceptable risk of bias. See *Caliendo v. Martin* (1993), 250 Ill. App. 3d 409, 421-22.

We also note that the Act itself provides for the insulation of police board members from political influence and that plaintiff does not contend that the filing of the complaint by the Mayor somehow breached these provisions. The Act provides that a mayor or village president appoints police board members; however, this is done only with the consent of the city council or board of trustees. (65 ILCS 5/10—2.1—1 (West 1992).) Moreover, once appointed, board members may not be removed from office without cause, a hearing before the legislative body, and a majority vote of the legislative body. (65 ILCS 5/10—2.1—3 (West 1992).) With this statutory insulation of police board members from political pressure in mind, we conclude that a mere allegation of a due process violation based on alleged political influence by a mayor or village president, without more, fails to establish a due process violation.

The cases cited by plaintiff, *Keefer v. Trizna* (1978), 64 Ill. App. 3d 844, *Brown v. Civil Service Comm'n* (1985), 133 Ill. App. 3d 35, *Farmer v. McClure* (1988), 172 Ill. App. 3d 246, and *Lewis v. Hayes* (1987), 152 Ill. App. 3d 1020, generally hold that when an administrative agency

makes a rule the administrative agency is then bound by its rule. We certainly do not disagree with that proposition. However, we hold that if an administrative agency violates such a rule the violation is only a reversible error if the negatively affected party shows that he was prejudiced. Plaintiff has not done that here.

For all these reasons, we conclude that even if the Board erred because it did not follow Rule II(a) when it heard and decided the complaint brought by the Mayor rather than the Chief, the error was not reversible error because it did not prejudice plaintiff.

## STANDARD OF PROOF

Plaintiff next contends that the Board erred when it applied an improper standard of proof to reach its findings on counts III and VIII of the complaint against plaintiff. Count III charged that plaintiff violated the cause clause of the Act, police rules, and criminal assault and criminal battery statutes. Count VIII charged that plaintiff violated the cause clause of the Act, police rules, and a section of the Liquor Control Act which provides that a violator is guilty of a Class A misdemeanor.

Plaintiff raised this standard-of-proof issue before the Board. The Board responded by stating that it would determine the appropriate standard of proof before making its findings. The Board found plaintiff guilty of counts III and VIII by a preponderance of the evidence. In its findings, the Board did not provide any explanation as to why it used the preponderance-of-the-evidence standard. Thus, the Board apparently concluded that the appropriate standard of proof as to counts III and VIII was the preponderance-of-the-evidence standard.

Plaintiff contends that the Board erred because Rule I(d) of chapter V of the Rules required a higher standard of proof for counts III and VIII. Rule I(d) provides:

"(d) The complainant initiating any proceedings which provides for a hearing before the Board has the burden of proof to establish that cause does exist by a 'preponderance of evidence' and, should the question of crime be involved, the rule of 'reasonable doubt' shall not control, but must be proven by clear and convincing evidence."

With respect to count III, the Board found that plaintiff's conduct violated the Act and the police rules. However, the Board did not find that plaintiff's conduct violated the assault or battery statutes (the Board's findings did not mention the statutes). With respect to count VIII, the Board found that plaintiff's conduct violated the Liquor Control Act as well as the Act and the police rules.

The circuit court stated, and the parties agree, that the preponderance-of-the-evidence standard was the correct standard as to counts I, II, and VII even if Rule I(d) was in effect. As to count III, the court determined that the Board did not find that plaintiff violated a criminal statute, but only the Act and the police rules. As to count VIII, the court determined that the Board's use of the preponderance standard was proper under Rule I(d) regarding the alleged violations of the Act and the police rules because "a question of crime was not the issue as to those allegations." The court then agreed with the Mayor that under Illinois case law "even when a criminal offense is the basis of a charge before an administrative body, the required standard of proof is by a preponderance of the evidence." Finally, the court concluded that plaintiff failed to show that the Board's use of the preponderance standard was improper.

On appeal, plaintiff contends that the plain words of Rule I(d) require proof of an allegation by clear and convincing evidence whenever a "question of crime" is involved in the allegation. Plaintiff maintains that the allegations in count III and count VIII certainly involved a question of crime and therefore Rule I(d) and its requirement of proof by clear and convincing evidence applied to both counts. Plaintiff argues that the circuit court's determination that different standards of proof applied to different elements of the allegations in counts III and VIII (such as whether cause was established) is incorrect because all of the elements were based on the same conduct. Plaintiff asserts that the conduct described in counts III and VIII was *in haec verba* with the conduct described in the criminal statutes cited, so the same conduct required for the crime is the same conduct required for the other elements of the allegations and attempting to apply different standards of proof to different elements is illogical and a violation of Rule I(d). Finally, plaintiff contends that the circuit court's determination that Illinois case law applied and only required a preponderance standard was incorrect because a board can make rules requiring a higher standard than the underlying statute and when a board does that, as the Board did here, then the higher standard applies with the force of law.

Defendants respond that even if Rule I(d) was valid, it did not apply to the Board's findings as to count III because those findings did not state that plaintiff committed a criminal act by the conduct alleged in count III. With respect to count VIII, the Board, like the circuit court, attempts to distinguish its findings as to the Act and police rule elements of the allegations from the criminal element of the allegations. The Board argues that the clear and convincing stan-

dard only applied, if at all, to the allegation of the violation of the criminal statute. In addition, the Board argues that even if it was error not to use the clear and convincing standard for the criminal element of the count VIII allegations, there was no prejudice to plaintiff because the criminal element of the allegation was relatively minor when weighed against the other allegations in counts I, II, III, VII, and VIII, which were properly proved under the preponderance-of-the-evidence standard and were more than enough to sustain the Board's action.

Defendants correctly assert that the preponderance-of-the-evidence standard of proof generally applies to police board disciplinary proceedings under the Act even when conduct that constitutes a crime is charged. (*Clark v. Board of Fire & Police Commissioners* (1993), 245 Ill. App. 3d 385, 391-92 (applying *Board of Education v. State Board of Education* (1986), 113 Ill. 2d 173, 190-91, balancing test to police board disciplinary hearing).) However, a properly enacted police board rule may provide greater protections for employees than those provided for by the underlying statute. *Lewis v. Hayes* (1987), 152 Ill. App. 3d 1020, 1024.

■ Here, we now know that the Board adopted Rule I(d) requiring a clear and convincing standard of proof when the "question of crime" is involved. A question of crime is certainly involved in counts III and VIII. However, we will not determine the effect of Rule I(d) on counts III and VIII because that would necessitate consideration of evidence not in the record before the Board when it acted, and we cannot do that (735 ILCS 5/3—110 (West 1992)). Based on the record before it, the Board deemed the Rules, including Rule I(d), invalid, and for that reason apparently did not apply Rule I(d) to counts III and VIII. We must therefore remand to the Board for the taking of additional evidence by the Board.

On remand, the Board must first determine whether its Rules were properly adopted and are therefore valid. If the Board determines that its Rules were valid, then the Board must apply Rule I(d) to counts III and VIII of the amended complaint against plaintiff and determine whether the application of Rule I(d) to these counts changes its findings and decision.

We cannot resolve this issue, as we did the jurisdiction issue, because we cannot determine that plaintiff was not prejudiced by the alleged standard-of-proof error. We agree with plaintiff that the plain words of Rule I(d) require that the clear-and-convincing-evidence standard of proof be applied to an allegation when a "question of crime" is involved. We also agree with plaintiff that the plain language of Rule I(d) requires that the clear-and-convincing standard

be applied to all elements of such an allegation, including the cause clause, and that the Board may not apply the preponderance standard to these elements when they are part of an allegation involving the question of crime. We base our conclusion on the words in Rule I(d) which state that a complainant must "establish that cause does exist *** should the question of crime be involved *** by clear and convincing evidence."

Here, the Board applied the preponderance standard to counts III and VIII, which clearly involved questions of crime. This was erroneous under Rule I(d). In addition, the Board may have applied different standards of proof to different elements in the count III allegations. Consequently, we cannot determine whether the Board might have reached a different decision had it properly applied the standards of proof required by Rule I(d).

It may be that even if the Board was unable to find plaintiff guilty of either or both count III or count VIII, the Board would have decided that its findings on counts I, II, and VII were sufficient to support a decision to terminate plaintiff's employment. But that decision is for the Board to make after applying the appropriate standard of proof to each count as required by Rule I(d).

## SANCTIONS

Plaintiff's final issue on appeal is whether the circuit court erred when it denied plaintiff's motion to supplement the record and for sanctions. Plaintiff contends that the conduct of the Board and its attorneys surrounding the erroneous determination of invalidity of the Rules was sanctionable under Supreme Court Rule 137. Official Reports Advance Sheets No. 26 (December 22, 1993), eff. February 1, 1994.

To support this contention, plaintiff first points to the Board's determination that the Rules were valid in another case (Kuhn v. Village of Algonquin, 90—MR—148) on September 6, 1990, six days after the Board discharged plaintiff in this case. Plaintiff asserts that Kuhn's attorney attacked the validity of the Rules in Kuhn on the ground that the Rules had not been published, the same basis for the Mayor's attack on the Rules in this case. Plaintiff claims that the Board's attorneys in Kuhn proved that the Rules had been published and were therefore valid by including a copy of a publication receipt in a letter sent by the Board to Kuhn's attorney on April 11, 1991. Plaintiff argues that date is significant because it was four days before the Board's attorneys filed their brief in the circuit court in this case arguing that the Rules were invalid. Plaintiff contends that this shows that the Board's attorneys knew that the Rules were valid

while they were arguing in this case that the Rules were invalid. Plaintiff asserts that this conduct is duplicitous on its face and a sanctionable violation of Rule 137.

Rule 137 provides, in pertinent part, as follows:

> "The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law \*\*\*, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. If a pleading, motion, or other paper is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the pleader or movant. If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, may impose upon the person who signed it, a repre-sented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of rea-sonable expenses incurred because of the filing of the pleading, motion or other paper, including a reasonable attorney fee.
> \*\*\*
> This rule shall apply to the State of Illinois or any agency of the State in the same manner as any other party. Furthermore, where the litigation involves review of a determination of an administra-tive agency, the court may include in its award for expenses an amount to compensate a party for costs actually incurred by that party in contesting on the administrative level an allegation or denial made by the State without reasonable cause and found to be untrue." Official Reports Advance Sheets No. 26 (December 22, 1993), eff. February 1, 1994.

Thus, under Rule 137, both client and counsel must make a rea-sonable inquiry into the facts to support a legal claim or defense before filing motions and other legal papers with the court. (*Regan v. Ivanelli* (1993), 246 Ill. App. 3d 798, 809.) In determining what consti-tutes a Rule 137 violation, courts use an objective standard of what was reasonable under the circumstances existing at the time the al-leged violation was made. (*Elledge v. Reichert* (1993), 250 Ill. App. 3d 1055, 1060.) The decision whether to impose Rule 137 sanctions is a matter within the sound discretion of the circuit court and should not be disturbed absent an abuse of discretion. *In re Estate of Hoover* (1993), 155 Ill. 2d 402, 419.

However, as a predicate to such deference, the circuit court must conduct an evidentiary hearing and make explicit findings on the matter under the rule announced in *In re Estate of Smith* (1990), 201

Ill. App. 3d 1005. (*Heiden v. Ottinger* (1993), 245 Ill. App. 3d 612, 621.) This is because "[f]or a court of review to enter its decision without benefit of the trial court's explicit findings tends to establish too many *ad hoc* rules of law as to the correct result in any given case." *Smith*, 201 Ill. App. 3d at 1010.

■ Here, our review of the record shows that the circuit court denied plaintiff's motion for sanctions without holding an evidentiary hearing and without making explicit findings. Therefore, we cannot determine whether the circuit court abused its discretion when it denied plaintiff's motion for sanctions.

Based on the foregoing, we vacate the part of the circuit court order which affirmed the Board's use of the preponderance-of-the-evidence standard as to counts III and VIII of the complaint against plaintiff. We also vacate the part of the order which denied plaintiff's motion to supplement the record and for sanctions. We remand for further proceedings on these issues. We affirm the remainder of the judgment of the circuit court of McHenry County.

We also urge the legislature to consider statutorily providing uniform rules of procedure and standards for boards of police and fire commissioners.

Affirmed in part; vacated in part and remanded.

QUETSCH and COLWELL, JJ., concur.